**Zachary SIPES, By and Through his natural mother and next friend Lori SLAUGHTER, and Lori Slaughter, Plaintiffs,**

v.

**Kenneth J. RUSSELL, Defendant.**

**No. Civ.A. 99–2613–KVH.**

United States District Court,
D. Kansas.

Jan. 12, 2000.

David M. Bryan, Overland Park, KS, for Plaintiff.

Jill Frost, Franke & Schultz, P.C., Kansas City, MO, for Defendant.

### *MEMORANDUM AND ORDER*

VRATIL, District Judge.

Lori Slaughter and Zachary Sipes, by and though his natural mother and next friend, bring suit against Kenneth J. Russell. Plaintiffs allege violation of the Residential Lead–Based Paint Hazard Reduction Act of 1992 (RLPHRA), 42 U.S.C. § 4851 *et seq.*, the Toxic Substance Control Act (TSCA), 15 U.S.C. § 2689, and negligence. This matter comes before the Court on *Defendant's Motion to Dismiss For Lack Of Subject Matter Jurisdiction And For Failure To State A Claim Upon Which Relief Can Be Granted* (Doc. # 5) filed June 14, 1999. Defendant seeks dismissal of plaintiffs' complaint for lack of subject matter jurisdiction under Rule 12(h)(3) and failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P. For the reasons set forth below, the Court finds that defendant's motion should be sustained.

### *Standards of Review*

### I. *Rule 12(h)(3) Motion to Dismiss Standards*

■ Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. *See Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir.1994); *Fitzgerald v. City of Ottawa Kan.*, 975 F.Supp. 1402, 1403 (D.Kan.1997). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is absent." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974); *see also* Fed.R.Civ.P. 12(h)(3). The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper. *See Armstrong v. Goldblatt Tool Co.*, 609 F.Supp. 736, 737 (D.Kan.1985); *see also Fitzgerald*, 975 F.Supp. at 1403. When defendant challenges federal jurisdiction, plaintiffs bear the burden of showing why the case should not be dismissed. *See Jensen v. Johnson County Youth Baseball League*, 838 F.Supp. 1437, 1439–40 (D.Kan.1993).

### II. *Rule 12(b)(6) Motion to Dismiss Standards*

A 12(b)(6) motion should not be granted unless it is beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief or when an issue of law is dispositive. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The Court must assume as true all well pleaded facts in plaintiffs' complaint and view them in the light most favorable to plaintiffs. *See Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *see also Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984).

The issue in reviewing the sufficiency of plaintiffs' complaint is not whether they will prevail, but whether they are entitled to offer evidence to support their claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that plaintiffs can prove no set of facts in support of their theory of recovery that would entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.*, 927 F.2d 1111, 1115 (10th Cir.1991). Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements that must be proved. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

### *Factual Background*

On or about June 15, 1996, plaintiff Lori Slaughter entered into a contract to lease residential property at 8716 West 49th Terrace, Kansas City, Kansas beginning July 1, 1996. Defendant, the lessor, did not disclose the existence of lead-based paints in the home before or after the

parties executed the lease. After plaintiffs took possession of the property, Ms. Slaughter noticed a change in the behavior of her son, Zachary Sipes. In June 1997, she sought medical attention for Zachary. Nearly eight months later, in October of 1998, physicians determined that Zachary had toxic levels of lead in his system from chewing on painted wood surfaces, causing severe and permanent injuries including brain damage.

Plaintiffs bring suit pursuant to 28 U.S.C. § 1331, alleging that defendant violated RLPHRA, 42 U.S.C. § 4852d(b)(3)(4)(5), TSCA, 15 U.S.C. § 2689, and federal regulations, 40 C.F.R. §§ 745.100 *et seq.*, by failing to disclose the presence of lead. Plaintiffs also bring a state law negligence claim.

### Analysis

Defendant argues that the Court should dismiss plaintiffs' RLPHRA claim for lack of subject matter jurisdiction because plaintiffs were not the intended beneficiaries of the statute. Alternatively, defendant alleges that plaintiffs have failed to state a claim on which relief can be granted because the applicable RLPHRA regulations were not in effect when Ms. Slaughter leased the premises. Defendant argues that the regulations were not effective until September 6 or December 6, 1996, and that he therefore owed no duty of disclosure. Plaintiffs respond that the RLPHRA regulations were effective as of October 28, 1995, pursuant to 42 U.S.C. § 4852d(d). Defendant further argues that the Court lacks subject matter jurisdiction over any TSCA claim because TSCA authorizes injunctive relief, but not a private right of action for compensatory damages.

**1.** Defendant also argues that plaintiffs must bring their RLPHRA suit pursuant to 42 U.S.C. § 1983 because RLPHRA, 42 U.S.C. 4852d(b), is not directed to private citizens and cannot be the basis for subject matter jurisdiction. He argues that since Section 4852d(a)(1) requires the Secretary and the Administrator of the EPA to pass regulations, private citizens are not subject to the statute. *See* 42 U.S.C. § 4852d(a). But 42 U.S.C. § 4852d(b)(3) & (4) explicitly permits a pri-

## I. *RLPHRA*

### A. *Subject Matter Jurisdiction*

Defendant asks the Court to dismiss plaintiffs' RLPHRA claim for lack of subject matter jurisdiction because plaintiffs were not the intended beneficiaries of the Act.[1] Plaintiffs assert that the Court has subject matter jurisdiction over its RLPHRA claim under 28 U.S.C. § 1331. The Court agrees with the plaintiffs and holds that subject matter jurisdiction exists.

The probability of plaintiffs' success on the merits of their RLPHRA claim has no bearing on the existence of subject matter jurisdiction. *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). A complaint that appears to state a cause of action under a federal statute should be dismissed only when the claim is clearly immaterial or is wholly insubstantial and frivolous. *See id.* at 682–83, 66 S.Ct. 773. To ascertain whether plaintiffs' claims are immaterial or insubstantial, the Court must examine the federal statute in question to decide if plaintiffs have a cause of action under the statute. *See Adams v. Republic Steel Corp.,* 621 F.Supp. 370, 375 (W.D.Tenn.1985). In 42 U.S.C. § 4852d(b)(3) & (4), RLPHRA expressly creates a private cause of action and explicitly provides that:

(3) Any person who knowingly violates any provision of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual.

(4) In any civil action brought for damages pursuant to paragraph (3), the ap-

vate citizen to bring suit for violations of this section. Furthermore, the regulations are clearly applicable to private citizens. Section 745.101 of the regulations states that "[t]his subpart applies to all transactions to sell or lease target housing." 40 C.F.R. § 745.101. Section 745.118(c) & (d) are exactly the same as 42 U.S.C. § 4852d(b)(3) & (4). Thus the regulations suggest that the statute intends to provide a private cause of action.

propriate court may award court costs to the party commencing such action, together with reasonable attorney fees and any expert witness fees, if that party prevails.

*See also* 40 C.F.R. § 745.100; John P. Fensler & Leonard A. Bernstein, *Lead Poisoning at Home: New Federal Disclosure Duties*, 26 Real Est. L.J. 7, 17–18 (1997) (commenting that statute creates private right of action). The plain language of the statute and the regulation provide a private cause of action for compensatory damages, court costs, attorney fees and witness fees. Therefore, contrary to defendant's assertion, RLPHRA and its regulations provide private citizens a cause of action.

The Court notes but declines to follow *Santiago ex rel. Muniz v. Hernandez*, 53 F.Supp.2d 264 (E.D.N.Y.1999). In *Santiago*, an action under 42 U.S.C. § 1983, an apartment resident sued the City of New York and an apartment owner for failure to cure lead-based paint hazards in her home under the Housing and Community Development Act (HCDA), 42 U.S.C. § 5301 *et. seq.*, the Lead–Based Paint Poisoning and Prevention Act (LPPPA), 42 U.S.C. § 4822 *et. seq.*, and RLPHRA. *Id.* at 265–66. The *Santiago* court considered the goals of RLPHRA and applied an implicit language analysis by looking at both *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and *Blessing v. Free-*

*stone*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), to decide whether RLPHRA implicitly gave plaintiff a private cause of action against the government and whether RLPHRA provided plaintiff a federally protected right.[2] *Id.* at 272. It found that RLPHRA was "intended to benefit the general public, rather than a special class of persons" and held that plaintiffs did not have a private right of action against the City. *Id.* Because the *Santiago* court analyzed whether a private citizen could bring a RLPHRA cause of action against the government, which subsidized the apartment owner, it did not consider the explicit language of RLPHRA and its regulations, 40 C.F.R. § 745.100 *et seq.*, which provides a private cause of action. *See* 42 U.S.C. § 4852d(b)(3) & (4).

### B. *Failure to State a Claim*

In order for plaintiffs to recover under 42 U.S.C. § 4852d and 40 C.F.R. 745.100 *et seq.*, plaintiffs must show that (1) Ms. Slaughter was a lessee, (2) defendant was a lessor who failed to make the proper disclosures under 40 C.F.R. § 745.107, (3) the leased property was target housing, and (4) the contract was signed after the effective dates in 40 C.F.R. § 745.102. *See* 40 C.F.R. § 745.100 *et seq.* The main element in dispute is the effective date of the regulations.

Defendant argues that under 40 C.F.R. § 745.102, the regulations did not take effect until September 6 or December 6, 1996, after Ms. Slaughter entered into the lease agreement.[3] Plaintiffs argue that

---

**2.** It appears that in *Santiago,* the City did not own the property. Plaintiff was apparently attempting to bring a Section 1983 action against the City rather than a claim under the citizen suit provisions of RLPHRA. The *Santiago* court therefore determined whether RLPHRA allowed an implied Section 1983 suit against the government, not whether RLPHRA provides its own cause of action against an owner.

**3.** Section 40 C.F.R. 745.102 states:

The requirements in this subpart take effect in the following manner: (a) For owners of more than four residential dwellings, the requirements shall take effect on September 6, 1996.(b) For owners of one of four resi-

dential dwellings the requirements shall take effect on December 6, 1996.

This section governs the requirements in 40 C.F.R. § 745.107, which includes the lessor's duty to provide the lessee a pamphlet about lead in homes; any information about the presence, location and condition of any known lead-based paint and/or hazards in the target house; any additional information about the known lead-based paint and/or hazards in the target house; and any records or reports available to the lessor about lead-based paint and/or hazards in the target house *before* the lessee is obligated under any contract to lease. *See* 40 C.F.R. § 745.107(a). If disclosure occurs after the lessor has made an offer, the lessor must disclose the information to the lessee before the lessee accepts the offer. *See* 40 C.F.R. § 745.107(b).

pursuant to 42 U.S.C. § 4852d(d), the regulations became effective on October 28, 1995.[4]

On November 2, 1994, the Environmental Protection Agency (EPA) proposed regulations, under 42 U.S.C. § 4852(d), for disclosure of lead-based paints in target housing offered for sale or lease. *See* Proposed Requirements for Disclosure of Information Concerning Lead–Based Paint in Housing, 59 Fed.Reg. 54984 (1994). The proposed regulations did not state an expected effective date. EPA recognized that proposed rules were due October 28, 1994 and that the final regulations were to be effective by October 28, 1995, but it said, without providing an explanation, that it could not meet those deadlines.[5] On March 6, 1996, months after the putative effective date, EPA announced that the final regulations would be effective on September 6 or December 6, 1996 depending on the type of residential structure involved.[6] *See* Requirements for Disclosure of Known Lead–Based Paint and/or Lead–Based Paint Hazards in Housing, 61 Fed.Reg. 9064 (1996). It cited promulgation delays as the reason for failing to meet the statutory deadline. Although the EPA realized that the regulations were important to consumer protection, it stated its view that the regulated community was

entitled to a phase-in-period to become familiar with the requirements and establish compliance procedures.[7] EPA's failure to abide by the statutory deadlines was presumably unlawful, *see Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir.1999); *Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 966 F.2d 1292, 1299–1300 (9th Cir.1992), but its unlawful action does not provide plaintiffs a cause of action to sue defendant. Applying the statutory deadline of October 28, 1995, as plaintiff argues, would pose serious issues with respect to defendant's constitutional rights to due process because he lacked notice of his disclosure obligation at the time the parties signed the contract at issue in this case. *See generally Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.").

■ Applying the regulatory effective dates, the Court holds that plaintiff is barred from bringing this cause of action. Ms. Slaughter entered into the lease with

---

**4.** Section 42 U.S.C. 4852d(d) states that "[t]he regulations under this section shall take effect 3 years after October 28, 1992."

**5.** Proposed Requirements for Disclosure of Information Concerning Lead–Based Paint in Housing, 59 Fed.Reg. 54984, 54984–54985 (1994), states that:

Although [Section 4852d(d) ] specified that final regulations should be promulgated no later than October 28, 1994, EPA/HUD will not be able to meet this deadline. It appears that Congress' intent in section 1018 was to provide a year between the promulgation of the final rule, and the effective date of the rule. Congress reasonably could have believed that this year was necessary in order that the real estate industry, landlords, sellers, etc. could become familiar with the rule requirements and set up procedures for compliance. For this reason, EPA and HUD believe that the effective date of the rule should be no earlier than 1

year after promulgation of the final rule, even if this occurs later than October 28, 1995. EPA and HUD believe that this interpretation is the one most consistent with congressional intent.

**6.** EPA took no formal action between November 2, 1994 and March 6, 1996.

**7.** The regulatory history provides:

While agreeing that this rule addresses an important consumer protection and empowerment goal, EPA and HUD believe that the rule's effective implementation requires an informed and prepared general public and regulated community. EPA and HUD believe that a phase-in period is necessary to provide adequate time for the real estate industry, private lessors, and independent housing sellers and lessors to become familiar with the rule requirements and to set up procedures for compliance.

61 Fed.Reg. 9064, 9068–9069 (1996).

defendant on June 15, 1996. Because the regulations were not effective until either September 6, 1996 or December 6, 1996, they were not applicable to that transaction.

The Court also rejects plaintiffs' argument that defendant owed a continuing duty of disclosure throughout the term of the lease. Because 40 C.F.R. § 745.107(b) says that disclosure must be given **before** the contract is entered into, plaintiffs cannot claim that defendant owed them a duty to disclose on September 6 or December 6, 1996. *See* 40 C.F.R. §§ 745.107(b) & 745.101(d). The only possible exception would be if Ms. Slaughter renewed the lease after September 6 or December 6, 1996. Lease renewals are covered by 40 C.F.R. § 745.101(d), which provides:

> This subpart applies to all transactions to ... lease target housing [any housing constructed prior to 1978, except housing for the elderly or persons with disabilities (unless any child who is less than 6 years of age resides or is expected to reside in such housing) or any 0–bedroom dwelling], ... with the exception of the following: ... (d) Renewals of existing leases in target housing in which the lessor has previously disclosed all information required under § 745.107 and where no new information described in § 745.107 has come into the possession of the lessor. For the purposes of this paragraph, renewal shall include both renegotiation of existing lease terms and/or ratification of a new lease.

Under 40 C.F.R. § 745.101(d), if the lease was renewed after September 6 or December 6, 1996, defendant had a duty to disclose the information set forth in C.F.R. § 745.107. Plaintiffs have not alleged, however, that defendant had a duty of disclosure under this theory. Therefore the Court does not address it.[8] *See Gallardo v. Board of County Com'rs, Kearny County*, 857 F.Supp. 783, 786 (D.Kan.1994) (court cannot assume that plaintiff can prove facts not alleged or that defendant violated laws in ways not alleged).

## II. *TSCA*

Plaintiffs seek damages under TSCA in the form of statutory penalties. Defendant argues that plaintiffs are not entitled to these damages because TSCA authorizes only injunctive relief to a private party. Plaintiffs have not contested this argument or cited any authority which allows them to collect damages under TSCA. The Court therefore finds that plaintiffs have conceded the point.

Furthermore, plaintiffs' claim for compensatory damages as a statutory penalty under TSCA does not state a claim on which relief can be granted. It appears that plaintiffs bring suit solely under RLPHRA, but RLPHRA provides that in certain circumstances a violation of RLPHRA will also constitute a violation of TSCA. Section of 42 U.S.C. § 4852d(b)(5) of RLPHRA provides that:

> It shall be a prohibited act under section 409 of the Toxic Substances Control Act [15 U.S.C. § 2689] for any person to fail or refuse to comply with a provision of this section or with any rule or order issued under this section. For purposes of enforcing this section under the Toxic Substances Control Act [15 U.S.C. § 2601 et seq], the penalty for each violation applicable under section 16 of that act [15 U.S.C. § 2615] shall not be more than $10,000.

One could therefore argue that RLPHRA violations subject defendant to liability for statutory penalties under TSCA.[9] On its face, though, 15 U.S.C. § 2615 permits only the United States (through the EPA)

---

**8.** Plaintiffs have submitted an affidavit which states that the lease ended on December 31, 1996, but that they continued to lease from defendant until 1998. Plaintiffs fall gingerly short of arguing that they renewed the existing lease and, if so, when. Moreover, they have never sought leave to amend their complaint.

**9.** TSCA establishes civil and criminal penalties, including fines to be paid to the United States, and possible imprisonment. *See* 15 U.S.C. § 2615.

to impose fines and penalties on TSCA violators. It does not allow private citizens to enforce the penalty provisions as a method for recovering compensatory damages. In *Brewer v. Ravan,* 680 F.Supp. 1176, 1183 (M.D.Tenn.1988), a private plaintiff sought to recover civil penalties as compensatory damage by adding the penalty section, 15 U.S.C. § 2615, to the citizen suit provision. The district court, relying on the plain meaning of the statute and legislative history, held that it lacked authority to impose civil penalties on a defendant for the benefit of a private plaintiff. *See also Pottstown Indus. Complex v. P.T.I. Services, Inc.,* No. 91–5660, 1992 WL 50084, at *7–8 (E.D.Pa. March 10, 1992) (to allow private citizen suit to recover penalties would completely bypass elaborate statutorily mandated administrative procedures). Thus the Court concludes that TSCA does not permit plaintiffs to recover statutory penalties. Because TSCA does not provide plaintiffs the right to recover the damages they seek, the Court dismisses plaintiffs' TSCA claim under Rule 12(b)(6).[10]

Alternatively, defendant argues that the Court lacks subject matter jurisdiction pursuant to Rule 12(h)(3). The Court disagrees with this assertion. The Court possesses jurisdiction pursuant to 15 U.S.C. § 2619, which states that "a private party may commence a civil action against any person . . . who is alleged to be in violation of this [Act] or any rule promulgated under section 2603, 2604, or 2605 to restrain such violation." Section 2619 only provides injunctive relief for private plaintiffs, however, not compensatory damages. *See* 15 U.S.C. 2619(a)(1). *See Mulcahey v. Columbia Organic Chemicals Co., Inc.,* 29 F.3d 148, 150 (4th Cir.1994) (TSCA does not provide compensatory damages); *Pottstown,* 1992 WL 50084, at 7–8; *Brewer,* 680 F.Supp. 1176; *Adams v. Republic Steel Corp.,* 621 F.Supp. 370, 376

(W.D.Tenn.1985) (private action for compensatory damages under TSCA does not state cause of action). Because plaintiffs do not seek injunctive relief under this section, the Court does not address whether such a claim would survive.

### III. *State Law Claim*

Plaintiffs argue that under 28 U.S.C. § 1367 the Court has supplemental jurisdiction over their negligence claim. According to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction. *See Lancaster v. Independent Sch. Dist. No. 5,* 149 F.3d 1228, 1236 (10th Cir.1998); *Henry v. Board of Leavenworth County Comr's,* 64 F.Supp.2d 1042, 1060–61 (D.Kan. 1999). If all federal claims are dismissed before trial, state law claims will generally be dismissed as well. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Thatcher Enters. v. Cache County Corp.,* 902 F.2d 1472, 1478 (10th Cir.1990). Because the Court has dismissed plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the state law negligence claim.

**IT IS THEREFORE ORDERED** that *Defendant's Motion to Dismiss For Lack Of Subject Matter Jurisdiction And For Failure To State A Claim Upon Which Relief Can Be Granted* (Doc. # 5) filed June 14, 1999, is hereby **SUSTAINED,** as follows: (1) defendant's motion to dismiss for failure to state a RLPHRA claim is sustained; (2) defendant's motion to dismiss for failure to state a TSCA claim is sustained; and (3) the Court declines to exercise supplemental jurisdiction over plaintiffs' state law negligence claim.

---

**10.** Defendant also argues that plaintiffs cannot bring an implied Section 1983 action under TSCA because they are not the intended beneficiary of TSCA. Because plaintiffs do not

respond to this argument, the Court declines to engage in a lengthy discussion whether TSCA provides an implied cause of action under 42 U.S.C. § 1983.