OPINION OF THE COURT
Elliott Wilk, J.
Plaintiffs have brought this action to recover damages and to compel defendants to enforce local and Federal statutes designed to control and eliminate the incidence of lead poisoning in children caused by the ingestion of lead-based paint. The municipal defendants move to dismiss the complaint for failure to state a cause of action.
Although denominated a class action, class certification has not yet been requested.
In their complaint, plaintiffs allege that lead paint poisoning is a devastating disease afflicting large numbers of New York City children each year. Its toxic effects include learning disabilities, brain damage, hyperactivity, loss of coordination, loss of appetite, abdominal pain, vomiting and convulsions. In extreme cases, lead paint poisoning is fatal.
Although lead-based paint is no longer permitted to be used on the interior surfaces of buildings, its former use makes it a continuing problem. Young children contract the disease when they chew on surfaces containing lead-based paint or when they ingest particles of lead-based paint that have fallen from cracked and peeling surfaces.[1] Removal of lead-based paint from the homes of young children dramatically decreases their chances of contracting the disease. Effective medical screening of young children, which detects the disease at its earliest stages, along with prompt treatment, significantly decreases the possibility of irreversible damage.
Plaintiffs’ affidavits, submitted in opposition to the motion to dismiss, demonstrate that, despite comprehensive Federal and local laws and regulations, the problem of lead paint poisoning persists. Plaintiffs contend that the municipal defendants’ failure to enforce these laws and regulations adequately contributes to the existence of lead poisoning in children.
*190 LOCAL LAWS & REGULATIONS
New York City Health Code § 173.13[2] and Housing Maintenance Code of the City of New York (Administrative Code of City of New York) § D26-12.01 (h) (renum § 27-2013 [h]),[3] enacted in an effort to address the problem of lead paint poisoning, contain specific and unambiguous provisions detailing the steps to be taken to eliminate the hazard.
Neither the Health Code nor the Housing Maintenance Code prescribes the manner in which the municipal defendants are to carry out their enforcement functions.
The municipal defendants, citing Matter of Community Action Against Lead Poisoning v Lyons (43 AD2d 201 [3d Dept 1974], affd 36 NY2d 686 [1975]), contend that the method of enforcement is a nonjusticiable function of the legislative or executive branch.
They further contend that the complaint contains no material allegation which suggests that they are not carrying out their responsibilities properly.
Plaintiffs contend that the municipal defendants may not hide behind the absence of specific legislative enforcement directions to shirk their responsibilities.
New York City Charter §§ 556 and 1802 require the municipal defendants to enforce the Health Code and the Housing Maintenance Code.
Section 556 of the New York City Charter, which defines the "[functions, powers and duties of the department” of health (DOH), including the enforcement of the Health Code, imposes mandatory duties on DOH and its commissioner (emphasis added).
Defendants contend that a mandatory duty is imposed only *191 with respect to 1 of the 20 subdivisions of section 556. This, however, is illogical and inconsistent with Health Code § 3.01 '(b), which states that DOH has a "duty to enforce” provisions of the code "pursuant to section 556 (c) of the Charter”.
Section 1802 (1) of the New York City Charter defines the "[p]owers and duties of the commissioner” of the Department of Housing Preservation and Development (HPD), including the enforcement of the Housing Maintenance Code (emphasis added). It is the HPD counterpart to New York City Charter § 556 and, like section 556, imposes a mandatory duty to enforce.
At a minimum, Health Code § 173.13 imposes a mandatory duty on DOH (1) to order the removal of lead-based paint when it receives notice that a child, living in a home with lead-based paint, has an elevated blood lead level, and (2) to request HPD to effect the removal if the landlord has not complied within five days of receipt of the order.
HPD is obligated to enforce section D26-12.01 (h) (renum § 27-2013 [h]) of the Housing Maintenance Code.[4] (See, NY City Charter § 1802 [1].) When HPD receives a complaint of peeling paint in a building constructed before 1960 where a child under seven resides, it must act to ensure that the lead paint is removed. The regulations promulgated pursuant to section D26-12.01 (h) (renum § 27-2013 [h]) (Regulations Relating to the Use of Lead Based Paint in Multiple Dwellings, Mar. 9, 1982) provide a comprehensive scheme for the removal of lead-based paint. They include specific provisions for inspection and the supervision of the removal process. Additionally, section D26-12.01 (h) (3) (renum § 27-2013 [h] [3]) classifies lead paint violations as "class C immediately hazardous” subject to the enforcement mechanisms contained in article 51 (renum art 2) of the Housing Maintenance Code. When a landlord does not expeditiously repair a class C violation,[5] article 51 (renum art 2) provides HPD with a variety of enforcement mechanisms ranging from monetary penalties to effecting the repairs itself.
Although the method of enforcement may be discretionary, *192 enforcement is not. Because the municipal defendants must enforce the Health and Housing Maintenance Codes, the causes of action pertaining to Health Code § 173.13 and Housing Maintenance Code § D26-12.01 (h) (renum § 27-2013 [h]) are justiciable. (See, Klostermann v Cuomo, 61 NY2d 525 [1984]; Wilkins v Perales, 128 Misc 2d 265 [Sup Ct, NY County 1985]; Matter of Campbell Oil Co. v Chu, 127 Misc 2d 281 [Sup Ct, Albany County 1985].)
In Klostermann v Cuomo (supra), the Court of Appeals drew a distinction between "those acts the exercise of which is discretionary” and "those acts which are mandatory but are executed through means that are discretionary.” (Supra, at 539.) The court found that "if a statutory directive is mandatory, not precatory, it is within the courts’ competence to ascertain whether an administrative agency has satisfied the duty that has been imposed on it by the Legislature and, if it has not, to direct that the agency proceed forthwith to do so.” (Supra, at 531.) Although a cause of action challenging the wisdom of a governmental program may not be justiciable, a request that a "program be effected in the manner [in which] it was legislated” clearly is justiciable. (Supra, at 537.) Plaintiffs here do not challenge the wisdom of local laws and regulations. Rather, they, like the plaintiffs in Klostermann, seek a determination and enforcement of their rights under laws and regulations which impose mandatory duties on the municipal defendants.
Where mandatory acts are involved, claims are not rendered nonjusticiable merely because the acts "may be complex and rife with the exercise of discretion.” (Supra, at 530.)
The municipal defendants’ reliance on Matter of Community Action Against Lead Poisoning v Lyons (43 AD2d 201 [3d Dept 1974], affd 36 NY2d 686 [1975], supra) is misplaced. The Appellate Division dismissed the CPLR article 78 petition for mandamus in Community Action largely because the governmental acts petitioners sought to enforce involved "the exercise of a great deal of judgment and discretion * * * and any attempt to frame a proper order embodying petitioners’ requests * * * would boggle the keenest of legal minds, irrespective of the attendant problems of its interpretation and enforcement”. (Supra, at 203.)
The decision in Community Action (supra)[6] does not state *193 whether the governmental acts petitioners sought to enforce were discretionary or mandatory. To the extent that they were mandatory, the Klostermann court, clarifying the doctrine of justiciability in New York, implicitly overruled Community Action. If the laws involved in Community Action were precatory, the Appellate Division decision is distinguishable from this case.[7]
The municipal defendants argue that even if the causes of action pertaining to local laws and regulations are justiciable on their face, they should be dismissed because their moving papers demonstrate that the municipal defendants adequately carry out any duties imposed on them. I find this argument unpersuasive. On a motion to dismiss, the complaint must be construed in a light most favorable to plaintiffs. (Rovello v Orofino Realty Co., 40 NY2d 633, 634 [1976].)
The papers in opposition provide ample evidence that the municipal defendants do not adequately carry out their duties under Housing Maintenance Code § D26-12.01 (h) (renum § 27-2013 [h]) and Health Code § 173.13. The individual plaintiffs and specialists in the field of lead poisoning in New York City have submitted affidavits indicating that lengthy delays in the removal of lead paint are the rule rather than the exception. The affidavit of Eloise Johnson, the mother of two lead-poisoned children, asserts that although DOH and HPD had actual notice of lead paint violations in her apartment as early as August 1983 (when her children were diagnosed as having lead poisoning), DOH did not even request HPD to effect the removal until July 1984. Similarly, Caroline Prester’s affidavit asserts that although DOH had notice of peeling paint in her apartment as early as May 1984 (when her daughter was diagnosed as having lead poisoning), the lead paint in her apartment was not completely removed until March 1985. The lead paint in the common areas of her building has still not been removed.
The affidavits of Maxine Golub, Chairperson of plaintiff New York City Coalition to End Lead Poisoning and Director of the Lead Poisoning Prevention Project at Montefiore Medical Center, and of Dr. John F. Rosen, Professor of Pediatrics and *194 head of the Division of Pediatric Metabolism of Albert Einstein College of Medicine support the allegations in the complaint with specific examples of the municipal defendants’ failure to act and with observations gathered in their own efforts to secure compliance with local lead paint laws for their patient population.
Additionally, the municipal defendants’ own papers suggest a serious lack of compliance. For example, the Rappaport affidavit indicates that when DOH inspects apartments pursuant to New York City Health Code § 173.13, they check only areas with visibly peeling paint. Section 173.13 requires removal of all lead-based paint in all areas accessible to young children.
Accordingly, the municipal defendants’ motion to dismiss the causes of action pertaining to local laws and regulations is denied.
FEDERAL LAWS & REGULATIONS
The municipal defendants also move to dismiss the causes of action which allege noncompliance with Federal Medicaid laws and regulations relating to the Early and Periodic Screening, Diagnosis and Treatment program (EPSDT) on the grounds that they do not create a private right of action and that the municipal defendants meet the requirements of the program.
EPSDT is a component of the Federal Medicaid program. It imposes an obligation on the municipal defendants both to ensure that certain medical screening services, including lead poisoning screening, are actually available to Medicaid-eligible children, and to take active and effective measures to inform eligible families of the availability of these services. (42 CFR 441.56 [a] [1]; 441.61 [b]; 441.62; Stanton v Bond, 504 F2d 1246, 1250 [7th Cir 1974].)
The individual plaintiffs, who are Medicaid recipients, have enforceable rights under the Medicaid program (Social Security Act, tit XIX, 42 USC § 1396 et seq.) and its implementing regulations via 42 USC § 1983.[8] The United States Supreme Court has explicitly held that suits "under § 1983 are proper to secure compliance with the provisions of the Social Security Act”. (Edelman v Jordan, 415 US 651, 675 [1974]; accord, *195 Maine v Thiboutot, 448 US 1 [1980]; Rosado v Wyman, 397 US 397 [1970].) Moreover, in Mitchell v Johnston (701 F2d 337 [5th Cir 1983]), the Fifth Circuit specifically found that Medicaid recipients have enforceable rights under the EPSDT program. Thus, the Medicaid laws and regulations relating to the EPSDT program do create a private right of action.
As participants in the Medicaid program, the municipal defendants are obligated "to provide certain minimum mandatory services, one of which is” the EPSDT program. (Mitchell v Johnston, supra, at 340.) 42 CFR 440.230 (b) requires that "[e]ach service [provided under the Medicaid program] must be sufficient in amount, duration, and scope to reasonably achieve its purpose.” 42 CFR 441.56 (a) (1) requires local agencies to provide "a combination of written and oral methods designed to inform effectively all EPSDT eligible individuals (or their families) about the EPSDT program.” (Emphasis added.)
The complaint alleges that the municipal defendants’ EPSDT lead poisoning screening program fails to meet either of these Federal requirements. Plaintiffs have submitted affidavits and documents which suggest that less than 5% of eligible families in New York City are actually referred to EPSDT lead poisoning screening and that this does not meet even minimally acceptable standards of medical practice. They contend that this alarmingly low referral rate is attributable to the municipal defendants’ failure to provide information and referral services reasonably calculated to accomplish the preventive health care purpose of the EPSDT program. Plaintiffs’ opposition papers also suggest that the municipal defendants have failed to make enough facilities available to meet the need for lead poisoning screening. Plaintiffs have provided ample support for their contention that the municipal defendants’ EPSDT lead poisoning screening program fails to meet minimum Federal requirements.
Accordingly, the motion to dismiss the causes of action pertaining to the EPSDT program is denied.
The Federal Lead-Based Paint Poisoning Prevention Act (LPPPA) (42 USC §§ 4821-4846) and its implementing regulations (24 CFR part 35) require local housing agencies to notify tenants of housing owned or financially assisted by the United States Department of Housing and Urban Development (HUD associated housing) of the dangers of lead paint, and to inspect for and correct lead paint hazards in such housing.
*196 Plaintiffs allege that the individual plaintiffs living in HUD associated housing have a private right of action against local housing agencies for failure to fulfill their obligations under the LPPPA and its regulations. I agree.
24 CFR 966.4 (e) (2), a regulation issued pursuant to the United States Housing Act of 1937, as amended by title II of the Housing and Community Development Act of 1974 (42 USC § 1437 et seq.) requires local housing agencies that receive financial assistance from HUD to comply with all HUD regulations, including 24 CFR part 35, that materially affect the health and safety of tenants. When Congress mandates local officials to act in accordance with specific statutory standards, as it has here, it creates enforceable rights under 42 USC § 1983. (See, Samuels v District of Columbia, 770 F2d 184, 196 [DC Cir 1985]; see also, Pennhurst State School v Halderman, 451 US 1, 20, 28 [1981].) Significantly, Federal courts have held that tenants of HUD associated housing may maintain an action under the LPPPA (Ashton v Pierce, 541 F Supp 635, 637-638 [US Dist Ct, DC 1982], affd 716 F2d 56, amended 723 F2d 70 [DC Cir 1983]), and that they have enforceable rights against local housing agencies and officials who fail to comply with Federal laws. (Thorpe v Housing Auth., 393 US 268 [1969]; Beckham v New York City Hous. Auth., 755 F2d 1074, 1077 [2d Cir 1985].)
The municipal defendants contend that the LPPPA applies to them only with respect to section 8 housing because HPD receives Federal funding only for this type of HUD associated housing. Apparently, the New York City Housing Authority (NYCHA) receives Federal funding for all other types of HUD associated housing. Because NYCHA is a corporate entity independent from the municipal defendants and is not a named defendant, the claims relating to nonsection 8 HUD associated housing must be dismissed. However, plaintiffs are granted leave to amend the complaint to add NYCHA as a defendant.
The claims relating to HPD’s compliance with LPPPA with respect to section 8 housing are not dismissed. Plaintiffs have enforceable rights under this act and the opposition papers sufficiently support the allegations of noncompliance in the complaint.
DAMAGES
A municipality is not generally liable for damages for *197 failure to enforce statutes or regulations. (O’Connor v City of New York, 58 NY2d 184 [1983].) However, the New York courts have fashioned two exceptions to this general rule. First, a municipality may be found liable "where disregard of the command of [a] statute results in damage to one of the class for whose especial benefit the statute was enacted.” (Motyka v City of Amsterdam, 15 NY2d 134, 139 [1965].) Second, liability exists where a municipality fails to perform a function where it has specific knowledge of an inherently dangerous instrumentality over which the municipality has some supervisory control. (Smullen v City of New York, 28 NY2d 66 [1971]; Runkel v City of New York, 282 App Div 173 [1st Dept 1953].)
The municipal defendants move to dismiss the plaintiffs’ damages claims arguing that these claims do not fall within either exception to the rule of municipal tort immunity. However, the complaint and supporting affidavits indicate that certain named plaintiffs, as well as potential class members,[9] may well be able to demonstrate the special relationship required in Motyka (supra). They should be given the opportunity to do so at trial. Similarly, whether the municipal defendants had knowledge of lead paint violations and failed to act reasonably to correct them, and whether lead paint violations constitute an "inherently dangerous instrumentality” are all questions of fact to be determined by the trier of the facts.
The municipal defendants’ contention that the complaint should be dismissed because it seeks more relief than can be granted under the applicable laws and regulations also must fail. (Matter of Bezio v New York State Off. of Mental Retardation & Developmental Disabilities, 62 NY2d 921, 924 [1984].)'
CONCLUSION
The motion to dismiss is denied except with respect to the claim against the NYCHA. The municipal defendants are granted leave to serve an answer pursuant to CPLR 3211 (f) within 30 days of receipt of a copy of this order with notice of entry.

. Children also contract lead poisoning in other ways. However, lead-based paint on the interior surfaces of their homes is a primary cause of the disease.

. Section 173.13 (d) of the New York City Health Code authorizes the Department of Health to order the removal of paint in a dwelling when it determines that its metallic lead content exceeds the statutory limit and that a resident has an excessively high blood level and free erythrocyte porphyn level. Should the building owner fail to comply, the Department of Health is empowered to request the Emergency Services Bureau of the Department of Housing Preservation and Development (HPD) to make the necessary repairs.

. Section D26-12.01 (h) (renum § 27-2013 [h]) of the Administrative Code of the City of New York, which is enforced by HPD, provides that it is a class C violation for a multiple dwelling to have paint with a metallic lead content in excess of the statutory standard. A violation is presumed to exist when a child under seven years of age resides in a multiple dwelling erected prior to January 1, 1960 and the dwelling contains peeling paint.

. The municipal defendants concede that HPD must establish procedures for enforcement of section D26-12.01 (h) (renum § 27-2013 [h]) of the Administrative Code of the City of New York.

. Section D26-51.01 (renum § 27-2013 [h]) of the Housing Maintenance Code requires landlords to correct immediately hazardous violations within 24 hours.

. The Court of Appeals affirmed the decision in Matter of Community *193 Action Against Lead Poisoning v Lyons (36 NY2d 686, 688) on the opinion of Justice Main at the Appellate Division.

. The laws at issue in Matter of Community Action Against Lead Poisoning v Lyons, (43 AD2d 201, affd 36 NY2d 686), although aimed at the elimination of lead poisoning, were different than the laws involved in this case.

. 42 USC § 1983 authorizes private suits brought to redress local officials’ violations of rights created by Federal statutes.

. This case has been brought as a class action. Presumably, plaintiffs will move for class certification.