Leigh P. ROSEBERRY, Sandra J. Yeager,
individually and as parents/best friends
of Paul Roseberry, Amanda Roseberry,
and Julianne Roseberry

v.

UNITED STATES of America.

Civ. No. 88–345–D.

United States District Court,
D. New Hampshire.

May 10, 1990.

John T. Barrett, Boston, Mass., for plaintiffs.

Benjamin Hiller, Cambridge, Mass., for defendant.

## ORDER

DEVINE, Chief Judge.

This Order addresses plaintiffs' motion to set aside a January 1989 judgment entered after this Court ruled that "plaintiffs are unable to establish the causal breach of any legal duty owed them by defendant pursuant to the [Federal Tort Claims Act]." Jan. 12, 1989, Order at 11.[1]  Authority for this motion is found in Rule 60(b), Federal Rules of Civil Procedure, which states:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresen-

---

1. Leigh and Sandra Roseberry filed suit to recover losses they suffered because of the Veterans' Administration's (VA) failure to discover and remove lead-based paint in a home which the Roseberrys bought from the VA. The Roseberrys and their two minor children subsequently occupied the premises, and the children allegedly sustained injuries as a result of ingesting lead-based paint.

The FTCA, 28 U.S.C. § 1346(b), permits suit against the government for such injury "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Because New Hampshire law does not recognize a claim against "private persons" under these circumstances, judgment was entered for the defendant.

tation, or other misconduct of an adverse party....

Plaintiffs offer two new arguments which they contend establish a legal duty to inspect property for dangerous levels of lead-based paint. First, they argue that there is now evidence to "prove" that before selling them their home in 1983 the Veterans' Administration inspected the property for lead poisoning. Plaintiffs contend that "there is a genuine issue of material fact as to whether that inspection was negligently performed because it failed to discover the defective paint conditions and dangerous levels of lead paint that poisoned plaintiffs' infant children." Plaintiffs' Memorandum of Law in Support of Rule 60(b) Motion at 5. Second, they argue that the federal Lead–Based Paint Poisoning Prevention Act ("the Act"), 42 U.S.C. § 4822, implies a private right of action through which plaintiffs can independently seek damages. The Court rejects both arguments.

1. *The New Evidence*

■ After appealing this case to the First Circuit, Leigh Roseberry petitioned his congressmen for assistance, and they in turn wrote to the VA. Based on two letters from the VA to Senator Warren Rudman and Congressman Robert Smith, plaintiffs assert that the VA voluntarily undertook to inspect the premises for lead paint hazards and should be liable for negligently performing that undertaking.[2] However, Janet Mason, the management broker who inspected the property, attests that she only inspected for "immediate hazards", and never classified chipping or peeling paint as such. Declaration of Janet Mason at ¶ 5. This evidence does not create a genuine issue of material fact sufficient to require vacation of the earlier judgment.

■ Further, the VA was under no duty to ensure the house was habitable and made no express or implied warranties as such. Rather, plaintiffs purchased their house "as is". As emphasized by the First Circuit in its Opinion in this case, "Put simply, a buyer cannot be heard to say that 'only after they were assured the house was safe and habitable ... did they purchase the house "as is".' Plaintiff has done nothing, and can do nothing, to change the bargain, even if, unfortunately, it turns out to be a poor one." *Roseberry v. United States*, [893 F.2d 1326 (Table)] (1989) (per curiam); *see also Raynor v. United States*, 604 F.Supp. 205, 209 (D.N.J. 1984).

To support their FTCA claim, plaintiffs rely on *Pierre v. United States*, No. 83–4214–S (D.Mass. June 2, 1988) (Skinner, J.). In *Pierre*, plaintiff's FTCA action also arose out of the sale of a home by the Government. In contrast to the case at bar, however, the parties in that case had agreed prior to the sale that the Government would repair the home, and the Government in fact did perform painting and repairs. In that case, the question was not whether there was an "undertaking" by the Government; rather, the issues were how far its undertaking to paint and repair the home extended, to what extent plaintiff relied on its undertaking, and whether it performed the services with due care. Based on the fact that the undertaking to repair was part of the purchase

**2.** In pertinent part, both letters refer to a federal regulation which the VA concedes is applicable to VA property sales:

The regulation requires that VA have properties inspected for defective paint conditions, that certain remedial actions be taken if defective paint conditions are found and that purchasers be provided with a notification concerning the dangers of lead poisoning in homes constructed prior to 1950. Our review indicates that the regulation was complied with. Our Manchester office had the property inspected by a management broker who did not find or report any defective paint conditions. Our Manchester office provided Mr. Roseberry with the lead poisoning notice required by law.

The Government takes the position that the letters' contents were "incorrect" since prior to 1987 the VA's New Hampshire management broker had not been instructed to look for defective paint conditions under 24 C.F.R. § 35.56. It describes the evidence on which plaintiffs rely on as "an unfortunate situation of miscommunication between the VA's field office and the Central Office, which now has been corrected." Defendant's Memorandum in Opposition to Rule 60(b) Motion at 16.

**410**

agreement, the court refused to dismiss plaintiff's claim. Here, however, plaintiffs have failed to show that the Government agreed to do anything other than sell the house "as is". Thus, plaintiffs' reliance on *Pierre* is misplaced.

### 2. The Lead–Based Paint Poisoning Prevention Act

■ Alternatively, plaintiffs argue that the relevant section of the Act, 42 U.S.C. § 4822, and its attendant regulations, 24 C.F.R. § 35.50–.56, independently provides them with an implied private right of action apart from the FTCA.

In determining whether to infer a private cause of action from a federal statute, courts are required to focus on Congress's intent in enacting the statute. *Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1987). "[U]nless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981).

Although two courts have found an implied private right of action in the Act, *see New York City Coalition to End Lead Poisoning v. Koch*, 138 Misc.2d 188, 524 N.Y.S.2d 314 (1987), *aff'd*, 139 App.Div.2d 404, 526 N.Y.S.2d 918 (1988); *Ashton v. Pierce*, 541 F.Supp. 635 (D.D.C.1982), *aff'd*, 716 F.2d 56 (D.C.Cir.1983), neither court has found a remedy in money damages implicit in that right. Instead, both courts found that residents of public housing had a right to sue the housing administrators to compel compliance with federal and state lead-based paint poisoning regulations. Neither court recognized a right to recover money damages for such noncompliance, which is the remedy sought by plaintiffs here.

Designed to combat the substantial health hazards to children occasioned by the presence of lead-based paint in older housing units, the Act is, in essence, a legislative directive to the Secretary of Housing and Urban Development (HUD) to establish and implement procedures addressing such hazards.[3] The Act is barren of any elaborate enforcement provisions or remedies. It is purely an administrative authority-granting statute. Creating a judicial remedy here goes beyond the "elemental canons of statutory construction." *Middlesex County Sewerage Auth. v. National Sea Clammers Assoc.*, 453 U.S. 1, 14, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1980) (provisions in statutes authorizing enforcement by government officials and private citizens will not be read to imply additional judicial remedies for private citizens); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) (statute which prescribes certain conduct and does not create or alter any civil liberties does not create a private cause of action for damages). Therefore, the Act does not give plaintiffs an independent basis to assert a cause of action for money damages.

### Conclusion

For the reasons stated herein, the Court denies plaintiffs' Rule 60(b) motion (document no. 18). Accordingly, defendant's subsequent motion for a protective order (document no. 24) is dismissed as moot.

SO ORDERED.

---

**3.** *See* S.Rep. No. 93–130, 93rd Cong., 1st Sess. 2, *reprinted in* 1973 U.S.Code Cong. & Admin. News 2403, 2411.