**L.B. III, et al., Plaintiffs**

v.

**HOUSING AUTHORITY OF LOUISVILLE, Defendant.**

**Civil Action No. 3:02CV–777–H.**

United States District Court,
W.D. Kentucky,
at Louisville.

Aug. 23, 2004.

Glenn A. Cohen, Carl D. Frederick, Paul Joseph Hershberg, Seiller & Handmaker, Louisville, KY, William C. Robinson, Mattingly & Simms, Springfield, KY, for Plaintiffs.

K. Gregory Haynes, Christopher Tyson Gorman, Lisa Catherine Dejaco, Wyatt, Tarrant & Combs, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

In December 2002, Plaintiffs, who are minor children, along with their parents, filed a class action lawsuit under Federal Rule of Civil Procedure 23 against the Housing Authority of Louisville ("HAL"). They seek monetary damages and injunctive relief resulting from violations by HAL of federal statutes, Kentucky state statutes, and Jefferson County municipal codes to prevent and eliminate lead-based paint exposure on public housing properties. Plaintiffs have also charged negligence, gross negligence, outrage, fraudulent concealment, punitive damages, and injunctive relief due to breach by HAL of its contracts with the U.S. Department of Housing and Urban Development ("HUD"), which contained covenants that HAL properties were safe and in compliance with federal statutes for the prevention of lead-based paint exposure. Defendant HAL moved to deny class certification and to dismiss Plaintiffs' claims for injunctive relief.

In reviewing Defendant's motion, however, the Court discovered some threshold questions that should be addressed prior to deciding the class certification question. First, the Court should decide whether Plaintiffs may state a cause of action under 42 U.S.C. § 1983 for violations of the Lead–Based Paint Poisoning Prevention Act ("LPPPA"), 42 U.S.C. § 4821, and the Residential Lead–Based Paint Hazard Re-

duction Act ("RLPHRA"), 42 U.S.C. § 4851. Second, assuming that Plaintiffs may state a § 1983 cause of action under either or both statutes, the Court then should evaluate whether Plaintiffs have standing to proceed.

## I.

Lead exposure is now a known public health hazard. While lead is present in many places in the environment and, consequently, at some level in most humans, high levels of lead exposure are particularly serious for young children. Children absorb and retain lead at higher levels than adults. As a neurotoxin, lead can cause delayed cognitive development, reduced IQ, damage to kidneys and other organs, and in cases of extreme exposure, coma and even death.

Young children are most at risk for lead exposure through lead-based paint. While use of lead-based paint was outlawed in 1978, buildings constructed before then still contain layers of lead-based paint. Children are particularly susceptible to lead exposure because they inhale dust from lead-based paint, pick up and eat chips of lead-based paint, or play around a property where dust or flakes from deteriorating lead-based paint have seeped into the soil. Children under seven are considered most vulnerable to lead-based paint exposure because their nervous systems have not fully developed and because they tend to engage in more hand-to-mouth activity. The Centers for Disease Control has set the threshold for lead poisoning at ten micrograms of lead per deciliter of blood, also considered an elevated blood lead level ("EBL").

Congress passed the LPPPA in 1971 and the RLPHRA in 1992 to address the problem of lead-based paint hazards in public and private housing. The LPPPA and its accompanying HUD regulations require public housing agencies, such as HAL, with dwellings built before 1978 to inform tenants of possible lead-based paint hazards, inspect their properties for these hazards, disclose any known contamination, and abate these hazards. The RLPHRA expanded notice and disclosure protections to residents in private housing. Under the act and its regulations, any seller or landlord of any pre–1978 housing must disclose known lead-based paint hazards to buyers and renters. The final RLPHRA regulations were issued on March 6, 1996 and went into effect on September 6, 1996 for landlords with over four residential properties, which would include HAL. The state of Kentucky and Jefferson County have enacted similar statutes and ordinances.

HAL offers subsidized rental housing to approximately 8,200 Louisville residents. It presently operates five multi-family developments; two other similar sites that it operated in the early 1990s are now closed. These developments are very large, containing 55 to 70 separate buildings with dozens of individual units in each building. HAL also operates "scattered housing" sites, or small apartment buildings with no more than ten apartment units in each building, throughout Louisville. In 2002, HAL operated 148 "scattered housing" sites with a total of 303 units.

While living in HAL housing, all four Plaintiffs were diagnosed with EBLs when they were under seven years old. Plaintiff L.B. III lived on a HAL property from 1993 to 1996 and was diagnosed with an EBL of 11 in June 1995 at the age of four. Plaintiff D.F. lived on a HAL property from 1993 to 1999 and was diagnosed with an EBL of 12 in January 1994 when he was approximately 18 months old. Plaintiffs I.K. V and I.M. are siblings, and they moved in 1992 to the HAL property where they currently live. I.K. V was diagnosed with an EBL of 11 in August 1995 when he was almost four years old. I.M. was diag-

nosed with an EBL of 14 in May 1992 when she was almost six years old. Plaintiffs have not shown any other symptoms of lead toxicity.

In 1992 and 1994, HAL hired outside consultants to inspect and test their properties for lead-based paint hazards. According to Plaintiffs, those reports documented lead-based paint hazards at several multi-family developments and scattered housing sites, including those where Plaintiffs have lived. In 2001, HAL remediated the lead-based paint hazards at the housing property where Plaintiffs I.K. V and I.M. presently live. Plaintiffs allege that, beginning in the early 1990s, HAL knew of the health risks that lead-based paint exposure posed for young children, knew that its properties had been identified as having lead-based paint hazards, failed promptly to disclose these hazards to its tenants in affected properties or to abate the contamination, and actively concealed information that would have informed tenants of the hazards. Plaintiffs allege that, as a result, the unabated and undisclosed lead-based paint hazards at the HAL properties where they were residing harmed them because they were diagnosed with EBLs.

## II.

The Court began its review of Defendant's motion by evaluating the main requirements for proceeding as a class action under FRCP 23—numerosity, commonality, typicality, and adequacy of representation.[1] That analysis, however, seems to be affected by whether Plaintiffs could recover monetary and injunctive relief under the LPPPA and the RLPHRA, and in turn, whether Plaintiffs could pursue a cause of action under § 1983 for violations of those statutes and had standing to do so. The Court therefore first addresses the question whether Plaintiffs can pursue their federal statutory claims under § 1983.

### A.

The Court will analyze the LPPPA claim first. The LPPPA essentially instructs the HUD Secretary to issue regulations regarding the inspection for, disclosure about, and abatement of lead-based paint hazards in public housing. It has no provision that allows an individual to bring suit directly under the statute; therefore, a plaintiff must have another way to enforce the statute, usually either a § 1983 claim or an implied private right of action. Here, Plaintiffs have chosen to pursue the LPPPA claim under § 1983.

The Supreme Court has held that a plaintiff can sue under § 1983 for violations of federal law in addition to violations of constitutional rights.[2] *Maine v.*

1. "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FRCP 23(a).

   In addition, Plaintiffs' class action must fit under one of the situations described in FRCP 23(b). Plaintiffs may continue with their class action if: (1) individual actions would create a risk of inconsistent adjudications or

   of adjudications that would be dispositive as to the interests of non-party members or impede their ability to protect their interests, FRCP 23(b)(1); (2) Defendant has acted or failed to act on grounds that are generally applicable to the entire class, making injunctive or declaratory relief an appropriate remedy, FRCP 23(b)(2); or (3) the court finds that common questions of law or fact predominate over questions affecting individual class members and that a class action is superior to other methods of adjudication, FRCP 23(b)(3).

2. In addition, in suing a municipality under § 1983, a plaintiff must allege that the violations occurred because of an official policy or

*Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). But only violations of federal *rights,* not just mere violations of federal statutes, will give rise to a § 1983 action. *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

■ The Supreme Court has created a two-part test for determining whether a plaintiff can sue under § 1983 for violations of federal law: (1) the statute must create an individual right, and if so, the plaintiff enjoys a rebuttable presumption that the right is enforceable under § 1983; (2) the defendant may rebut this presumption by showing that Congress either expressly or impliedly foreclosed an action under § 1983. *Wright v. City of Roanoke Redevelopment & Hous. Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); *Blessing,* 520 U.S. at 340–41, 117 S.Ct. 1353.

■ In order to determine whether a statute creates an individual federal right, the court must look at three factors: (1) the statute must benefit the putative plaintiff; (2) the right the plaintiff asserts must not be so "vague and amorphous" that the judiciary is not competent to enforce the right; and (3) the statute must impose a "binding obligation" on the states. *Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498, 510, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); *Blessing,* 520 U.S. at 340–41, 117 S.Ct. 1353.

More recently, the Supreme Court tightened and clarified the first element of the test to state that the text and structure of the statute must show that Congress intended to create new individual rights for a particular class of persons. *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283–87, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). The statute must have "the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights." *Id.* at 287, 122 S.Ct. 2268.

The Court has found several cases issued prior to the *Gonzaga* decision in which lower federal courts in various jurisdictions have found that a plaintiff could sue under § 1983 for violations of the LPPPA. *See, e.g., Paige v. Phila. Hous. Auth.,* No. CIV.A.99–CV–497, 2002 WL 500677 (E.D.Pa.2002); *Elliot v. Chi. Hous. Auth.,* No. 98 C 6307, 1999 WL 519200 (N.D.Ill.1999); *Aristil v. Hous. Auth. of Tampa,* 54 F.Supp.2d 1289 (M.D.Fla.1999); *Roman v. Morace,* No. 97 CIV. 341(DLC), 1997 WL 777844 (S.D.N.Y.1997); *German v. Fed. Home Loan Mortgage Corp.,* 885 F.Supp. 537 (S.D.N.Y.1995); *Simmons v. Charleston Hous. Auth.,* 881 F.Supp. 225 (S.D.W.Va.1995); *Hurt v. Phila. Hous. Auth.,* 806 F.Supp. 515 (E.D.Pa.1992). *But see Santiago v. Hernandez,* 53 F.Supp.2d 264 (E.D.N.Y.1999).[3] In essence, the courts in these decisions concluded that the plaintiffs, all of whom were

---

practice on the part of the municipality since municipalities cannot be held liable under *respondeat superior* for the negligent acts of their employees. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Here, Plaintiffs likely satisfy this requirement because they allege numerous instances where HAL ignored test results showing lead hazards, intentionally concealed information about lead hazards, and failed to inform tenants about these hazards. This case is not about one instance with one employee, but numerous instances involving various HAL personnel.

**3.** The *Santiago* case is distinguishable from the present case because the plaintiff in that case did not live in LPPPA target housing, which meant housing covered by an application for mortgage insurance or housing assistance payments from HUD. The plaintiff in *Santiago* had used public funds to have her apartment inspected for lead, but she herself did not receive housing assistance to cover her rent. 53 F.Supp.2d at 269–71. Here, all Plaintiffs have lived or currently live in public housing, the intended focus of the LPPPA.

tenants in public or Section 8 subsidized housing, were the intended beneficiaries of the LPPPA; the LPPPA and its accompanying regulations were specific enough in their directives not to be "vague and amorphous"; and the LPPPA spoke in mandatory, not preferential terms, creating a binding authority on states to correct lead hazards in public housing. In addition, the courts found that the LPPPA neither explicitly foreclosed enforcement under § 1983 nor impliedly foreclosed enforcement because the statute established no alternative, comprehensive enforcement scheme.

In May 2004, however, a federal district court in the Sixth Circuit reached exactly the opposite conclusion based on its interpretation of the Supreme Court's 2002 opinion in *Gonzaga*. *Johnson v. City of Detroit*, 319 F.Supp.2d 756 (E.D.Mich. 2004). The court conceded that the plaintiff, a resident in public housing, fell "within the broader class of beneficiaries who receive protection under the [LPPPA]." *Id.* at 767. The court, however, focused on whether the LPPPA had the "rights-creating" language necessary to show that Congress had intended to create new federal rights under the statute. *Id.* It concluded that the statute did not. First, the LPPPA addresses itself specifically to the HUD Secretary, who is the entity being regulated under the statute, rather than tenants in public housing and directs the Secretary to establish procedures for eliminating lead hazards on public housing properties. The statute sets forth specific requirements that the Secretary must include in the procedures HUD and local public housing agencies will use to abate lead-based paint hazards. In the court's

view, "[t]his language [fell] well short of unambiguously conferring individual rights on tenants who would benefit from the Secretary's procedures." *Id.* Second, the court found that the LPPPA regulations were "silent" about whether tenants could bring a private enforcement action. *Id.* Interestingly, the court contrasted the LPPPA with the RLPHRA, which specifically allows a plaintiff to recover relief equal to three times the amount the plaintiff incurred in damages, thus evincing a congressional intent to create an enforceable federal right. *Id.* at 768. Third, the court noted that the other previous court decisions finding an enforceable right under the LPPPA were all issued prior to the *Gonzaga* decision and that none of those decisions contained "a persuasive examination" of any statutory provisions "that unambiguously confer a private right through clear rights-creating language."[4] *Id.* at 769.

Based on the rationale in *Johnson*, there appears to be a serious question whether Plaintiffs can state a cause of action under § 1983 for violations of the LPPPA. Even if Plaintiffs can pursue a cause of action for a violation of the LPPPA, some courts question whether Plaintiffs may seek money damages. The RLPHRA does authorize monetary relief. At least one federal court, however, has recognized only a right to enforce compliance with the LPPPA and specifically held that no monetary relief is available. *Roseberry v. United States*, 736 F.Supp. 408, 410 (D.N.H.1990); *see also Ashton v. Pierce*, 541 F.Supp. 635, 644 (D.D.C.1982) (concluding that plaintiffs were entitled to seek injunctive relief against HUD under the LPPPA as third-party beneficiaries of annual contribution

---

4. A secondary issue also arises concerning whether the LPPPA regulations can create an enforceable federal right under § 1983. The court in *Johnson* noted that this question has created conflicting opinions in other jurisdic-

tions. 319 F.Supp.2d at 761. The Sixth Circuit, however, has ruled that federal regulations can create a federally enforceable right. *Loschiavo v. City of Dearborn*, 33 F.3d 548, 551–53 (6th Cir.1994).

contracts between HUD and the local housing agency), *aff'd*, 716 F.2d 56 (D.C.Cir.1983). Another federal court, however, has disagreed with *Roseberry*. The Eastern District of Pennsylvania concluded that the test the Supreme Court established in *Wright* for determining whether a private right of action exists under § 1983 for violations of federal law did not distinguish between injunctive and monetary relief. *Hurt*, 806 F.Supp. at 526. Accordingly, the court held, both injunctive and monetary relief are available in a § 1983 action to enforce the LPPPA. *Id.* The parties have not had an opportunity to consider this issue.

### B.

Next, the Court will analyze the RLPHRA claim. Again, Plaintiffs have sued HAL under § 1983 for violations of this statute. Unlike the LPPPA, however, the RLPHRA specifically states that "[a]ny person who knowingly violates any [notice and disclosure] provision ... shall be subject to civil money penalties...." 42 U.S.C. § 4852d(b)(1). In addition, "[a]ny person who knowingly violates the [notice and disclosure] provisions of [RLPHRA] shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual." *Id.* § 4852d(b)(3). The statute also allows the court to "award court costs to the party commencing such action, together with reasonable attorney fees and any expert witness fees, if that party prevails." *Id.* § 4852d(b)(4).

These damages provisions probably provide a private right to sue directly under the statute. A plaintiff would thus be able to bypass § 1983 altogether. One federal district court has ruled that, under these provisions, RLPHRA "expressly creates a private cause of action." *Sipes ex rel. Slaughter v. Russell*, 89 F.Supp.2d 1199, 1201 (D.Kan.2000). "The plain language of the statute and the regulation provide a private cause of action for compensatory damages, court costs, attorney fees and witness fees." *Id.* at 1202. At the very least, as the *Johnson* court indicated in *dicta*, these damages provisions seem to show that Congress intended to create a private right of action under RLPHRA. 319 F.Supp.2d at 768.

Since parties have not had an opportunity to brief the specific legal question whether Plaintiffs may assert a cause of action under § 1983 for either the LPPPA or the RLPHRA, the Court will ask for further briefing before resolving these issues and deciding class certification.

### III.

Even though the RLPHRA authorizes money damages, the effective date of the regulations could affect whether some Plaintiffs may recover damages under the statute. The RLPHRA was passed in 1992, yet HUD and the Environmental Protection Agency ("EPA") did not issue the final rule implementing the statute's disclosure requirements until March 6, 1996. Requirements for Disclosure of Known Lead–Based Paint and/or Lead–Based Paint Hazards in Housing, 61 Fed. Reg. 9,064 (Mar. 6, 1996). Under the RLPHRA, Congress required HUD and EPA to promulgate final regulations by October 28, 1994. 42 U.S.C. § 4852d(a)(1). Congress stated that these regulations would take effect on October 28, 1995, giving property owners at least one year to comply with the regulations. *Id.* § 4852d(d); *see also* Proposed Requirements for Disclosure of Information Concerning Lead–Based Paint in Housing, 59 Fed.Reg. 54,984, 54,984–85 (Nov. 2, 1994). HUD and EPA, however, did not issue the proposed regulations until November 2, 1994 and acknowledged that they would not be able to meet Congress's prescribed schedule. 59 Fed.Reg. at 54,984. The 60–

day comment period ended in early 1995, and the agencies issued their final rule on March 6. 61 Fed.Reg. at 9,066. The final regulations were effective on September 6, 1996 for property owners with more than four dwellings and December 6, 1996 for property owners with one to four dwellings. *Id.* at 9,069. Thus, the relevant deadline for HAL was September 6.

It is unclear as of what date HAL was under a duty under the RLPHRA to disclose known lead-based paint hazards to renters. The Second Circuit has held that the disclosure obligations took effect on the date prescribed in the regulations rather than the date prescribed in the statute itself. *Sweet v. Sheahan*, 235 F.3d 80, 86 (2d Cir.2000). It concluded that the statute obligated the agencies to promulgate regulations but did not impose any disclosure obligations upon property owners. The property owners were required to disclose lead hazards under the regulations, not the statute. Thus, an owner's duty to disclose did not take effect until the regulations became effective. *Id.* at 86–87. The court further concluded that the controlling date was either September 6 or December 6, 1996 and not October 28, 1995 as prescribed by Congress: (1) the agencies in fact missed the October 1995 deadline, and proposed regulations do not have any legal effect, and (2) the statutory provision allowing private parties to sue HUD and EPA for their delay in promulgating regulations suggested that "Congress did not intend that the duty of disclosure commence in the absence of the specified regulations." *Id.* at 87.

Should this Court adopt the Second Circuit's opinion, HAL would need not have complied with RLPHRA's disclosure requirements until September 6, 1996. Accordingly, any Plaintiffs who vacated HAL housing before that date would be without a monetary remedy under the RLPHRA. Plaintiff L.B. III left HAL housing in 1996

although the Court does not have a specific date. If L.B. III did not live in HAL housing as of September 6, he will not be able to seek money damages under the statute. The other three Plaintiffs lived in HAL housing after September 6, 1996. Based on the allegations in Plaintiffs' complaint, the Court assumes that HAL failed to notify them of known lead-based paint hazards at that time although Plaintiffs have not given specific dates as to whether HAL actually timely disclosed the hazards after September 6, 1996. It appears that residents at the housing property where I.K. V and I.M. currently live were not aware of lead-based paint hazards until HAL remediated the problem in 2001.

The Court asks the parties to address these factual and legal issues concerning the effective date of the disclosure requirements under the RLPHRA.

## IV.

■■■ Assuming that Plaintiffs have stated a proper cause of action under § 1983, the Court must next resolve the question of standing. Standing concerns whether a litigant is entitled to have a court review the merits of a particular issue. It is founded out of concern for the properly limited role of courts in our society and a desire to have properly interested parties litigating in federal court. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Plaintiffs must meet the "case or controversy" requirement under Article III of the U.S. Constitution. Plaintiffs must allege " 'such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Id.* at 498–99, 95 S.Ct. 2197. To meet the "case or controversy" requirement, Plaintiffs must (1) have suffered an actual, concrete, and par-

ticularized "injury in fact" that (2) has a causal connection with Defendant's action and (3) is redressable in court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In addition, Plaintiffs must demonstrate prudential standing. They must show that they fall within "the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for [their] complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

██ Plaintiffs do not have standing to seek injunctive relief from HAL because they do not have constitutional standing to do so.[5] None of the Plaintiffs has "a personal stake" in requiring HAL to take remedial action to abate lead-based paint hazards at their place of residence. First, Plaintiffs D.F. and L.B. III did not live in HAL housing at the time the original complaint was filed, and neither lives in HAL housing now. Second, Plaintiffs I.K. V and I.M., who are siblings, presently live on a HAL property that was treated and abated by HAL for lead-based paint hazards in 2001 before the complaint was filed. They are no longer at risk for lead poisoning due to any alleged inaction on the part of HAL. Without standing, Plaintiffs cannot seek injunctive relief; therefore, these claims are dismissed.

██ Plaintiffs also seek monetary damages for their exposure to lead-based paint while they were living on HAL properties with a lead-based paint problem. This exposure, they allege, led to an EBL and thus to toxic blood lead levels. Exposure to high levels of lead constitutes an injury in fact. *See German*, 885 F.Supp. at 558; *Ashton*, 541 F.Supp. at 637. As described before, exposure to lead at levels high enough to cause lead poisoning is extreme-

ly hazardous for children under seven. Plaintiffs, who were all diagnosed with EBLs while they were living in HAL housing at ages younger than seven years, have thus suffered an actual injury in sustaining high levels of lead in their bloodstream as young children. In addition, their injuries are traceable to HAL's actions because they were diagnosed while living on HAL housing properties where there were known lead-based paint hazards. Finally, their injuries are redressable because they can seek monetary relief in court for harm incurred due to EBLs. Plaintiffs have "a personal stake" in repairing the damage done to their health by lead poisoning; therefore, they have constitutional standing to seek monetary relief for their injuries.

██ In addition, Plaintiffs have prudential standing. The two federal statutes under which Plaintiffs challenge HAL's actions—the LPPPA and the RLPHRA—address the hazards of lead-based paint contamination in housing, particularly for young children. The LPPPA and its accompanying regulations require public housing agencies to inspect their properties for lead-based paint hazards, to inform tenants of any hazards that exist, and to eliminate any such hazards. The RLPHRA and its accompanying regulations require landlords of public and private housing, in this case HAL, to disclose known lead-based paint hazards. Plaintiffs clearly fall within the "zone of interests" Congress envisioned in passing these statutes. They are children who either presently live or have lived in housing that was identified as having lead-based paint hazards and who, allegedly as a result, have suffered lead poisoning. Plaintiffs are the types of individuals that Congress in-

---

5. The Court does not address prudential standing with respect to Plaintiffs' claims for injunctive relief since lack of constitutional standing is dispositive.

tended to protect in passing these two statutes.

### V.

In sum, the Court invites Plaintiffs and Defendant to submit briefs on whether Plaintiffs may state a cause of action under § 1983 for violations of the LPPPA and the RLPHRA. If Plaintiffs may pursue their claims under the LPPPA, monetary relief appears to be their only option as they do not have standing for injunctive relief. Whether Plaintiffs may pursue monetary relief under the LPPPA, however, appears to be an open question. The Court also invites the parties to submit arguments on this issue.

Assuming Plaintiffs may pursue their claims under the RLPHRA, they are allowed to seek money damages under the statute. The Court, however, invites the parties to submit arguments regarding when HAL's duty of disclosure under the RLPHRA took effect. In addition, the Court requests clarification on the following factual questions: (1) which Plaintiffs were living on HAL properties as of September 6, 1996, and (2) when HAL disclosed information to Plaintiffs about the known lead-based paint hazards on its properties.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Several motions are pending that concern Plaintiffs' request for class certification. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion to deny class certification will remain pending until the Court reaches a decision as to subject matter jurisdiction.

IT IS FURTHER ORDERED that on or before **September 10, 2004,** each party shall file a memorandum discussing (1) whether Plaintiffs may assert a § 1983 claim for violation of the Lead–Based Paint Poisoning Prevention Act ("LPPPA") or the Residential Lead–Based Paint Hazard Reduction Act ("RLPHRA"); (2) whether Plaintiffs may seek monetary relief under the LPPPA; (3) whether September 6, 1996 is the effective date for the enforcement of regulations under the RLPHRA; and (4) the residential status of various Plaintiffs and the dates when HAL disclosed lead hazards to its residents as requested in this Memorandum.