**L.B. III, et al.  Plaintiffs**

v.

**HOUSING AUTHORITY OF LOUISVILLE Defendant**

**No. CIV.A. 3:02CV–777–H.**

United States District Court,
W.D. Kentucky,
at Louisville.

Nov. 18, 2004.

Authority of Louisville ("Defendant") in December 2002, alleging numerous violations of federal and state law and seeking monetary damages and injunctive relief. Defendant moved to deny class certification and to dismiss the claims for injunctive relief. In reviewing that motion, the Court discovered certain threshold issues that required consideration before addressing the class certification issue.

In its Memorandum Opinion dated August 23, 2004, the Court summarized the state of the law concerning whether Plaintiffs may state a claim under 42 U.S.C. § 1983 for violations of the Lead–Based Paint Poisoning Prevention Act ("LPPPA"), 42 U.S.C. § 4821, et seq., and the Residential Lead–Based Paint Hazard Reduction Act ("RLPHRA"), 42 U.S.C. § 4851, et seq. The Court asked for and has received further briefing on these issues. Those responses have assisted the Court in reaching the following conclusions.

Carl D. Frederick, Cynthia L. Effinger, Glenn A. Cohen, Paul J. Hershberg, Seiller & Handmaker, Louisville, LA, William C. Robinson, Mattingly & Simms, Springfield, LA, for Plaintiffs.

Christopher T. Gorman, Jennifer Starr, K. Gregory Haynes, Lisa C. DeJaco, Wyatt, Tarrant & Combs, Louisville, LA, for Defendant.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

Plaintiffs, four minor children, filed this class action lawsuit against the Housing

### I.

The Court first addresses the LPPPA claim.[1] The LPPPA requires the HUD Secretary to develop and implement procedures to reduce the hazards of lead-based paint in public housing. Since the statute does not explicitly provide a civil action to any aggrieved individuals, a plaintiff seeking to enforce the statute must resort to either § 1983 or an implied right of action theory. Here, Plaintiffs have chosen to pursue the LPPPA claim under § 1983. The Court must now decide whether the LPPPA contains rights enforceable in a § 1983 action.

---

1. For the factual background of this case, see *L.B. III v. Housing Authority of Louisville,* 344 F.Supp.2d 1009 (W.D.Ky.2004).

In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court first recognized that § 1983 actions may enforce rights created by federal statutes as well as by the Constitution. In subsequent cases, the Court continued to define the precise circumstances in which rights were enforceable under § 1983. In *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), the Supreme Court set out these factors to guide judicial inquiry into whether or not a statute confers a right: (1) Congress must have intended the provision to benefit the plaintiff; (2) the statute is not so vague that its enforcement would strain judicial competence; and (3) the asserted right must be couched in mandatory, rather than precatory, terms. *Id.* at 340–41, 117 S.Ct. 1353. This case and others led some courts to apply a rather broad standard for the first element: that § 1983 enforcement is permissible so long as the plaintiff falls within the general zone of interest that the statute protects.

Recently, in *Gonzaga University v. Doe*, the Supreme Court directly clarified and tightened the standard for this first element. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–90, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). After *Gonzaga*, a plaintiff can no longer satisfy the first element simply because he receives a benefit from the statute in question or is within its zone of interest. *Id.* at 282–83. Rather, the plaintiff must establish that Congress chose to create an "unambiguously conferred right." *Id.* at 283, 122 S.Ct. 2268. To create such a right Congress must use "rights-creating language" and speak in "clear and unambiguous" terms. *Id.* at 290, 122 S.Ct. 2268; 284 n. 3 (quoting Title VI for an example of rights-creating language: "No person in the United States shall . . . be subjected to discrimination . . .") (internal quotations omitted). Further, statutes focusing "on the person regulated rather than the individuals protected" suggest an absence of Congressional intent to create rights. *Id.* at 287, 122 S.Ct. 2268 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 289, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)). Applying this standard, the Sixth Circuit has found enforceable rights in unambiguous language. *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 572–73 (6th Cir. 2004) (the phrases "individual shall be permitted to cast a provision ballot" and "right of an individual to cast a provisional ballot" satisfied *Gonzaga* standard).

In light of *Gonzaga*, a district court in this circuit has determined that the LPPPA does not contain enforceable rights. *Johnson v. City of Detroit*, 319 F.Supp.2d 756, 769 (E.D.Mich.2004). The court began by noting that the LPPPA no doubt works a benefit to the residents of HUD housing. Yet because the statute lacks rights-creating language and focuses on the entity regulated (HUD) rather than the individuals protected (residents), it "falls well short" of conferring rights enforceable under § 1983. *Id.*

■ This Court agrees with the *Johnson* court's reasoning. Neither the text nor the structure of the LPPPA supports a finding that Congress intended to create enforceable rights for housing residents. Section 4821 sets forth the general mandate of the LPPPA:

> The Secretary of Housing and Urban Development, in consultation with the Secretary of Health and Human Services, shall develop and carry out a demonstration and research program to determine the nature and extent of the problem of lead based paint poisoning in the United States, particularly in urban areas, including the methods by which

the lead based paint hazard can most effectively be removed from interior surfaces, porches, and exterior surfaces of residential housing to which children may be exposed.

42 U.S.C. § 4821(a). Section 4822 then reduces this general mandate to a series of provisions beginning with:

The Secretary of Housing and Urban Development (hereafter in this section referred to as the "Secretary") shall establish procedures to eliminate as far as practicable the hazards of lead based paint poisoning . . . .

42 U.S.C. § 4822. These provisions evidence a clear Congressional focus on regulating the conduct of the HUD Secretary. The remaining portions of the statute and its implementing regulations [2] contain the same focus. Considering this unmistakable focus on the HUD Secretary rather than HUD residents, as well as the absence of rights-creating language in favor of the residents, the LPPPA fails to create rights enforceable under § 1983.[3] Ulti-

mately, the LPPPA illustrates well the *Gonzaga* distinction between benefits and rights. The LPPPA surely benefits Plaintiffs without expressly creating or conferring enforceable rights.

Accordingly, pursuant to *Gonzaga*, Plaintiffs may not maintain a § 1983 action for violation of the LPPPA.[4]

## II.

Plaintiffs also seek to enforce the RLPHRA pursuant to § 1983. The RLPHRA directs the Secretary of HUD and the Administrator of the Environmental Protection Agency ("EPA") to promulgate regulations requiring disclosure of lead-based paint hazards in privately owned housing for sale or lease. 42 U.S.C. § 4852d. And unlike the LPPPA, the RLPHRA creates an express cause of action for violation of its disclosure provisions: "[a]ny person who knowingly violates the [notice and disclosure] provisions of [RLPHRA] shall be jointly and several-

---

**2.** The Sixth Circuit has held that enforceable rights may arise not only from statutory language but from regulatory language as well. *Loschiavo v. City of Dearborn*, 33 F.3d 548, 551–53 (6th Cir.1994). Later Supreme Court decisions cast doubt on this holding. *Alexander v. Sandoval*, 532 U.S. 275, 289, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not"). In any event, the Court has surveyed the regulatory provisions and finds that, while they seek to protect residents from lead-based paint, they lack the rights-creating language required by *Gonzaga*. *See, e.g.*, 24 CFR § 35.500 ("The purpose of this subpart F is to establish procedures to eliminate as far as practicable lead-based paint hazards in HUD-owned single family properties that have been built before 1978 . . ."). Further, the regulations contain a provision, 24 CFR § 982.406, that expressly forecloses the possibility that the regulations themselves create enforceable rights for these Plaintiffs. The Court notes this provision but does not

exclusively rely on it, since it was enacted in 1995 and may have followed the times at which these Plaintiffs' claims accrued.

**3.** In arriving at this conclusion, the Court has surveyed the pre-*Gonzaga* decisions finding rights in the LPPPA and agrees with the *Johnson* court that none of these decisions contains an analysis that withstands *Gonzaga*. *Johnson*, 319 F.Supp.2d at 769. These cases simply conclude under the pre-*Gonzaga* standard that the LPPPA benefits tenants of HUD housing. *See, e.g., Aristil v. Housing Authority of the City of Tampa, Florida*, 54 F.Supp.2d 1289, 1293 (M.D.Fla.1999) ("the LPPPA evidences the requisite statutory intent to benefit low income housing residents that is necessary to claim a right enforceable under section 1983"). The cases do not point to any unambiguous rights-creating language in the statute.

**4.** This conclusion renders unnecessary the additional analysis of whether the LPPPA authorizes monetary relief.

ly liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual." *Id.* at § 4852d(b)(3). Further, the statute allows the court to "award court costs to the party commencing such action, together with reasonable attorney fees and any expert witness fees, if that party prevails." *Id.* at § 4852d(b)(4). Therefore, a plaintiff can proceed directly under the RLPHRA without relying on § 1983 at all. Defendant argues, however, that a RLPHRA claim is not available to Plaintiffs here because they do not fit the definition of "purchaser or lessee" contained in the statute. The Court agrees.

■ Only those who fit the definition of "purchaser or lessee" may state a claim under the RLPHRA. *Sipes ex rel. Slaughter v. Russell*, 89 F.Supp.2d 1199, 1202 (D.Kan.2000) (in order to state a claim under the RLPHRA plaintiff must be the purchaser or lessee of the property); *Wallace v. United States*, 335 F.Supp.2d 252, 259–60 (D.R.I.2004) (RLPHRA's disclosure obligations run from seller/lessor to original purchaser/lessee but not to subsequent purchasers or lessees); *Gladysz v. Desmarais*, No. Civ. 02–208–B, 2003 WL 1343033, at *2 (D.N.H. Mar. 17, 2003) (children exposed to lead-based paint in home could not state claim under RLPHRA because they were not purchasers or lessees). Here, Plaintiffs fail to fit the statutory requirement because they were neither purchasers nor lessees of the property in which they lived.[5] Moreover, Plaintiffs have not offered—nor would the statute permit—any

justification for extending the available cause of action under the RLPHRA beyond purchasers and lessees to all residents of the property. To do so would be to ignore the plain meaning of the statute. *Jackson v. General Motors Corp.*, 60 S.W.3d 800, 804 (Tenn.2001) ("The cardinal rule of statutory construction is to follow the plain meaning of the statute where the language is clear and unambiguous on its face."). Accordingly, Plaintiffs may not state a claim directly under the RLPHRA.

■ Nor may they enforce the RLPHRA pursuant to § 1983. To do so they must first establish that the RLPHRA creates enforceable rights for a class to which they belong. Again, to create enforceable rights the statutory language must unambiguously speak of rights rather than simply benefits. *Gonzaga Univ.*, 536 U.S. at 290, 122 S.Ct. 2268. Much like the LPPPA, the RLPHRA no doubt benefits residents by limiting their exposure to lead-based paint. 42 U.S.C. § 4851a(6) (one of stated purposes of RLPHRA is to "reduce the threat of childhood lead poisoning in housing owned, assisted, or transferred by the Federal Government"). But, also like the LPPPA, the RLPHRA lacks rights-creating language for residents, choosing instead to confer unambiguous rights only upon purchasers and lessees. 42 U.S.C. § 4852d(b)(3); 24 CFR § 35.96. Furthermore, the RLPHRA focuses on the entities being regulated rather than on the individuals protected. 42 U.S.C. § 4852d(a)(1) ("the Secretary ... shall promulgate regulations"; "the

---

**5.** The implementing regulations of the RLPHRA further define the terms purchaser and lessee as follows:

"Lessee means any entity that enters into an agreement to lease, rent, or sublease target housing, including but not limited to individuals, partnerships, corporations, trusts, government agencies, housing agen- cies, Indian tribes, and nonprofit organizations ... Purchaser means an entity that enters into an agreement to purchase an interest in target housing, including but not limited to individuals, partnerships, corporations, trusts, government agencies, housing agencies, Indian tribes, and nonprofit organizations." 24 CFR § 35.86.

seller or lessor shall ... disclose to the purchaser or lessee the presence of any known lead-based paint"); 24 CFR § 35.80 (RLPHRA imposes requirements on sellers and lessors). Thus the RLPHRA lacks enforceable rights for a class to which Plaintiffs belong.

Further, even if Plaintiffs could establish that the RLPHRA contains enforceable rights, their § 1983 claim would still fail because Congress impliedly foreclosed recourse to § 1983 by including a comprehensive remedial scheme in the statute. *Blessing v. Freestone,* 520 U.S. 329, 346–48, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (a remedial scheme will typically be "sufficiently comprehensive to supplant § 1983" if it contains a private remedy for aggrieved persons); *Middlesex County Sewerage Authority v. National Sea Clammers Assn.,* 453 U.S. 1, 23, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) ("We therefore conclude that the existence of these express remedies demonstrates not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under § 1983"). Thus Plaintiffs may not enforce the RLPHRA pursuant to § 1983.[6]

An order will be entered consistent with this Memorandum Opinion.

### ORDER

Having reviewed the memoranda of the parties and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Count I of Plaintiffs' complaint (monetary relief under 42 U.S.C. § 1983 for violations of the Lead–Based Paint Poisoning Prevention Act ("LPPPA"), 42 U.S.C. § 4821, et

seq., and the Residential Lead–Based Paint Hazard Reduction Act ("RLPHRA"), 42 U.S.C. § 4851, et seq.) is DISMISSED WITH PREJUDICE.

The Court will set a conference in the near future to discuss future schedules and issues.

---

6. This conclusion renders unnecessary a discussion of the effective date of the RLPHRA and whether Plaintiffs would have standing to assert a RLPHRA claim were it available to them.