# United States Court of Appeals
## For the First Circuit

No. 04-1908

JACOB C. MASON, BY HIS GUARDIAN, RICHARD HEISER, ESQ.;
NATASHA A. MASON, BY HER GUARDIAN, RICHARD HEISER, ESQ.,

Plaintiffs, Appellants,

v.

JAMES P. MORRISETTE; JOSEPH M. GRIFFITHS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr. U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin and Stahl, Senior Circuit Judges.

Neil T. Leifer, with whom Allyson S. Hauck, Thornton & Naumes, and Christopher J. Seufert, were on brief, for appellants.
Sean T. O'Connell, with whom Shaheen & Gordon, P.A., was on brief, for appellee Griffiths.
Stephen J. Dibble, with whom Robert T. Mittelholzer and Mittelholzer & Dibble, PLLC, were on brief, for appellee Morrisette.

April 7, 2005

**STAHL, <u>Senior Circuit Judge</u>.**  The issue presented in this appeal is whether a lessee's minor children have standing to sue a lessor for failure to disclose information regarding the hazards of lead paint as required by the Residential Lead-Based Paint Hazard Reduction Act ("RLPHRA"), 42 U.S.C. § 4851, <u>et. seq.</u>[1]  We find that they do not.

## I.   BACKGROUND

Plaintiffs-Appellants Jason C. Mason and Natasha A. Mason are minor children who resided with their mother, Lisa Mason, at 18-A West Bow Street, Franklin, New Hampshire from May 21, 1997 until July 2, 1998.  During that time, the property was first owned by Appellee James P. Morrisette and then was subsequently transferred to Appellee Joseph M. Griffiths.[2]  On September 29, 1997, Natasha was examined and found to have high levels of lead in her blood.  As a result, on October 15, 1997, the New Hampshire

---

[1]All references throughout the opinion to the United States Code are to 42 U.S.C.

[2]Prior to moving to the Bow Street apartment, the Masons resided at 94-95 Franklin Street in Franklin, New Hampshire, from December 1, 1996 to May 21, 1997, in an apartment owned at all relevant times by Appellee Morrisette.  In the Appellants' complaint to the district court, they stated that both Jason and Natasha were tested for lead poisoning and were determined to have high blood lead levels during the time they resided on Franklin Street.  The Appellants stated that their mother complained to Appellee Morrisette regarding a possible lead paint hazard in the Franklin Street apartment, and that Appellee Morrisette suggested that the Masons move to the West Bow Street apartment.  These facts are not relied on nor discussed by the Appellants in their brief to this court.

Division of Health Services inspected the West Bow Street apartment for lead paint and found significant lead contamination. Appellee Griffiths was ordered by the state to abate the lead hazards discovered during the inspection but did not comply. Both Jason and Natasha were subsequently tested and their blood contained dangerous amounts of lead. On July 2, 1998, the state of New Hampshire provided the Masons with emergency housing so that they could vacate their lead-ridden apartment.

Natasha and Jason, through their guardian and attorney Richard Heiser, brought suit in the United States District Court for the District of New Hampshire alleging that the Appellees violated the RLPHRA.[3] In their complaint, they also raised several state law claims including that the defendants violated the New Hampshire Consumer Protection Act, were negligent in failing to maintain both the Franklin Street and West Bow Street buildings, and misrepresented that the West Bow Street building was lead-free.

Defendants Morrisette and Griffiths moved to dismiss the RLPHRA claims, arguing that the leasehold in question was pursuant to an oral lease, and that the protections and remedies of the RLPHRA apply only to written leases. The district court, before ruling on the defendants' motion to dismiss, requested <u>sua sponte</u>

---

[3]It is not clear from the record, and the Appellants declined to provide an explanation at argument, why Lisa Mason, as the mother of Jason and Natasha, did not bring the suit against the Appellees.

-3-

that the parties address the issue of whether the minor children of a lessee have standing to sue the lessor under the RLPHRA. After reviewing the parties' submissions, the district court granted the defendants' motion to dismiss, holding that the minor children were not "lessees" for purposes of the RLPHRA and therefore had no statutory standing to seek remedies under that statute.[4]

The Appellants filed this timely appeal, arguing that the district court committed reversible error when it ruled that the minor children did not have standing because the plain language of the RLPHRA, along with the legislative history and the regulations implementing the RLPHRA, make it clear that the statute was enacted to protect children residing in residential property from lead poisoning, and thus Congress intended for the minor children of lessees to have standing under the civil liability provision. The Appellants contend that the district court's interpretation of the statute produces an absurd result because it provides that only the adult lessee may seek damages for violations of the disclosure provision of the RLPHRA when it is actually the children of the adult lessees, not the adults themselves, who are the ones likely to suffer injury from such violations. Finding that the plain

---

[4]The district court then declined to exercise supplemental jurisdiction over the Appellants' remaining state law claims.
We note that because the district court granted the Appellees' motion to dismiss based on the Appellants' lack of standing, the issue of whether the disclosure provision of the RLPHRA applies to oral leases is not before this court.

-4-

language of the statute limits the private cause of action to a "purchaser or lessee," and because the Mason children cannot be considered either, we affirm.

## II. ANALYSIS

We review a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo, and we ask whether the well-pleaded facts, taken as true, justify recovery on any supportable legal theory. See Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000). Thus, for purposes of our review of the district court's motion to dismiss, we assume that the defendants were obligated to disclose under the RLPHRA, that they did not disclose in violation of the RLPHRA, and that Natasha and Jason's lead poisoning was caused by the defendants' violation of the statute. With these assumptions, we turn to our review of the statute.

A.    The Statutory Scheme

The RLPHRA was enacted in 1992 in an effort, among other things, "to develop a national strategy to build the infrastructure necessary to eliminate lead-based paint hazards in all housing as expeditiously as possible" and to "educate the public concerning the hazards and sources of lead-based paint poisoning and steps to reduce and eliminate such hazards." § 4851a(1), (7). The Act was the response to congressional findings that "low-level lead poisoning is widespread among American children, afflicting as many as 3,000,000 children under age 6," § 4851(1); that "the health and

development of children living in as many as 3,800,000 American homes is endangered by chipping or peeling lead paint, or excessive amounts of lead-contaminated dust in their homes," § 4851(5); and that "the danger posed by lead-based paint hazards can be reduced by abating lead-based paint or by taking interim measures to prevent paint deterioration and limit children's exposure to lead dust and chips," § 4851(6).

As part of a comprehensive plan to reduce the hazards of lead-based paint in the national residential housing stock, the RLPHRA provided the statutory framework to require the disclosure of information concerning lead hazards upon the transfer of residential property. § 4852d. It is this "disclosure provision" that is the subject of the case before us today.

The disclosure provision of the RLPHRA directs the Secretary of the Department of Housing and Urban Development ("HUD") and the Administrator of the Environmental Protection Agency ("EPA") to "promulgate regulations . . . for the disclosure of lead-based paint hazards in target housing which is offered for sale or lease." § 4852d(a)(1).[5] The statute goes on to state:

> The regulations shall require that, before the purchaser or lessee is obligated under any contract to purchase or lease the housing, the seller or lessor shall—
> (A) provide the purchaser or lessee with a lead hazard information pamphlet . . . ;

_____

[5]"Target housing" is defined in the RLPHRA as "any housing constructed prior to 1978," with a few limited exclusions. § 4851b(27).

-6-

(B) disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing . . . ; and
(C) permit the purchaser a 10-day period . . . to conduct a risk assessment or inspection for the presence of lead-based paint hazards.[6]

§ 4852d(a)(1).

The statute also provides for an array of penalties for violations of the disclosure provision including a civil liability remedy which states: "Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual." § 4852d(b)(3). The HUD and the EPA have jointly promulgated regulations implementing Section 4852d, and have defined lessee to mean "any entity that enters into an agreement to lease, rent, or sublease target housing, including but not limited to individuals, partnerships, corporations, trusts, government agencies, housing agencies, Indian tribes, and nonprofit organizations." 40 C.F.R. § 745.103; 24 C.F.R. § 35.86. The issue we must decide is whether Congress intended for the minor children of lessees to have standing to enforce this civil liability provision against landlords who violate the disclosure provision.

B.      Our Review of the Statute

In our review of § 4852d(b)(3), we must first ask whether it is clear that Congress intended either to limit the term

---

[6]The ten-day inspection period is only for purchasers of target housing and does not apply to lessees of target housing.

"lessee" to a party who legally enters into a lease with a lessor or to permit the minor children who reside with the lessee to enforce the disclosure provision. See Bryson v. Shumway, 308 F.3d 79, 84 (1st Cir. 2002) ("If the meaning of a statute is clear, we enforce that meaning."). Here, the plain language of the statute limits recovery under § 4852d(b)(3) to a "purchaser or lessee." We find this limitation not only clear, but also consistent with the purpose of the disclosure provision--to provide the purchaser or lessee of target property with notice that there could be a lead-based paint hazard present in the subject premises, and the opportunity to either decline to enter into a contract regarding the premises or proceed forward with the transaction in the face of the knowledge that a lead-based paint hazard could be present. See § 4852d(a)(1). This disclosure provision does not require the seller or lessor to abate the lead-paint hazard, nor disqualify a purchaser or lessee with young children from occupying a property that possibly contains lead-based paint hazards. Thus, because a violation of the statute occurs when the seller or lessor fails to disclose, it is logical that the party harmed by the failure to disclose is the purchaser or the lessee. See Gladysz v. Desmarais, No. Civ. 02-208-B, 2003 WL 1343033, at *2 (D.N.H. March 17, 2003) (unpublished) ("The civil liability provision in RLPHRA is within the 'disclosure' section and as such, it is both logical and reasonable to read the civil liability to cover only purchasers or

-8-

lessees who were deprived of the required notice of lead hazards 'upon the transfer of residential property.'").  Although it appears that we are the first circuit court of appeals to address this issue, district courts have similarly found that the plain meaning of § 4852d(b)(3) limits recovery to a "purchaser or lessee" to the exclusion of minor children of a lessee.  See id. at *3 (holding that grandchildren of lessee residing in home with lead-based paint hazards did not have standing to sue landlord because § 4852d(b)(3) clearly limits recovery to a 'purchaser or lessee'); L.B. III v. Hous. Auth. of Louisville, 345 F. Supp. 2d 725, 729 (W.D. Ky. 2004) (minor children of lessees "fail to fit the statutory [standing] requirement because they were neither purchasers nor lessees of the property in which they lived").[7]

---

[7]The Appellants cite Sipes v. Russell, 89 F. Supp. 2d 1199 (D. Ks. 2000) as evidence that at least one district court has held that the minor children of a lessee have standing to pursue a claim under § 4852(b)(3).  In that case, the United States District Court for the District of Kansas held that although it did have subject matter jurisdiction over the plaintiffs' RLPHRA claims, the regulations implementing the disclosure provision of the RLPHRA did not take effect until after the plaintiffs entered into their lease with the defendant.  Therefore, the plaintiffs could not recover under § 4852(b)(3).  At no point did the court state that the minor children had standing to pursue a claim under § 4852(b)(3), and contrary to Appellants' argument, a finding of subject matter jurisdiction does not imply that a party has standing to bring a claim.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998); Cooperman v. Individual, Inc., 171 F.3d 43, 47 n.3 (1st Cir. 1999).

-9-

C.          The HUD/EPA Regulation and Legislative History

Having determined that Congress' intent to limit recovery under § 4852d(b)(3) to a "purchaser or lessee" is clear from a plain reading of the statute, it is not necessary for us to consult either the HUD/EPA regulation defining lessee or the legislative history of the RLPHRA.  See Bryson, 308 F.3d at 85 (If a "statute is unambiguous, we use neither legislative history, nor administrative agency interpretation.") (internal citations omitted).  We briefly discuss both, however, because we do not find that our interpretation of the statute is in conflict with either.

First, our interpretation is consistent with the HUD/EPA definition of lessee, which essentially confirms that any entity that is capable of entering into a legally binding contract for the purchase or lease of real property is permitted to seek redress for a violation of the disclosure provision of the RLPHRA; that is, the regulation clarifies that the term "lessee" is not limited to individuals and that it includes sublessees.  See 40 C.F.R. § 745.103; 24 C.F.R. § 35.86 & Comment IV(C)(9).  Thus, the regulation, which is a reasonable clarification of the statute, does not, as the Appellants contend, impermissibly narrow the class of  "lessees" who have standing under Section 4852(b)(3), and the Appellants do not have standing under either the regulation or the statute.

Similarly, our interpretation of Section 4852d does not conflict with the legislative history of the RLPHRA. To be sure, as Appellants point out, it is clear from both the legislative history and the text of the statute itself that the RLPHRA was enacted to protect children from the hazards of lead-based paint in residential housing. But, the disclosure provision is merely one method in an attempt to effectuate this goal, and does not conflict with the overarching purposes of the RLPHRA to protect children from lead poisoning.

Lastly, we note that the federal scheme to reduce the hazards of lead-based paint in residential housing is intended to be implemented in conjunction with state and local laws that require abatement of lead-based paint. Thus, the Mason children are not left without a remedy: they can pursue claims against the Appellees in the New Hampshire state courts.

### III. CONCLUSION

For the above-mentioned reasons, the district court's grant of the Appellees' motion to dismiss is **AFFIRMED.**