RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0241p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CHRISTINA ROBERTS, next friend of Howard
Felix Wipfel, a minor, and Thealyn Wipfel, a
minor,

                   *Plaintiff-Appellant,*

           *v.*

CHRISTOPHER HAMER; JOAN HAMER,

                   *Defendants-Appellees.*

No. 09-6481

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 09-00117—David L. Bunning, District Judge.

Argued: June 10, 2011

Decided and Filed: August 26, 2011

Before: COLE, McKEAGUE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Steven J. Megerle, Covington, Kentucky, for Appellant. Sherrill P. Hondorf, HONDORF LAW OFFICE, Batavia, Ohio, for Appellees. **ON BRIEF:** Steven J. Megerle, Covington, Kentucky, Robert N. Trainor, Covington, Kentucky, for Appellant. Sherrill P. Hondorf, HONDORF LAW OFFICE, Batavia, Ohio, Donald L. Nageleisen, Covington, Kentucky, for Appellees.

_____

## OPINION

_____

GRIFFIN, Circuit Judge. Plaintiff Christina Roberts, proceeding solely as the next friend of her two minor children, appeals the district court's dismissal of her children's claims against defendants Christopher and Joan Hamer for violations of the disclosure requirements contained in the Residential Lead-Based Paint Hazard

1

Reduction Act of 1992 ("RLPHRA"), 42 U.S.C. §§ 4851-4856. Because the statute does not provide her children with a cause of action to sue for the violations, we affirm.

I.

Christina Roberts is the mother of minors Howard Felix Wipfel and Thealyn Wipfel. In October 2002, Roberts and her partner (also the father of Roberts's two children) entered into a lease agreement with Christopher and Joan Hamer to rent an apartment in Covington, Kentucky. Before entering into the agreement, defendants allegedly failed to provide the family with federally-required disclosure forms regarding the potential presence of lead-based paint in the apartment building. Defendants also failed to provide the family with a precautionary pamphlet detailing how to protect against the dangers of lead-based paint. As a result of these failures, Roberts's children "were conceived, and resided in the subject property for several years where unknown to them high levels of lead were present." Roberts's minor children allegedly suffered damages as a result of the exposure to lead paint in the building and will continue to suffer physical and mental injury for the rest of their lives.

On behalf of her children, Roberts, as their next friend, filed a seven-count complaint against defendants. In count one, she contends that defendants' failure to make the appropriate disclosures before the family entered into the lease agreement violated the RLPHRA and the regulations promulgated thereunder. In counts two through seven, she asserts violations of both state law and the federal Toxic Substances Control Act, as amended ("TSCA"), 15 U.S.C. §§ 2601-2629.

Defendants moved under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure to dismiss all seven claims. With respect to the RLPHRA claim, defendants argued that the children lacked standing to assert a claim under the statute. They argued also that the children lacked a private right to sue for money damages under the TSCA. They sought a discretionary dismissal of the state-law claims without prejudice under 28 U.S.C. § 1367(c). Defendants included in their motion and supporting brief facts that were uncovered during discovery in a related state action involving Roberts. Roberts moved to strike defendants' entire motion on the basis that such material could not be

considered on a motion to dismiss and that converting defendants' motion into one for summary judgment was not possible because the factual statements contained in the motion were unsupported by citations to record evidence. *See* Fed. R. Civ. P. 56(c)(1).

The district court granted defendants' motion, dismissed the federal claims with prejudice, and dismissed the state-law claims without prejudice in its discretion under 28 U.S.C. § 1367. It found it unnecessary to consider materials outside of the complaint referenced in defendants' motion to dismiss, confined its review to the complaint's allegations, and denied as moot Roberts's motion to strike. The district court considered Roberts's request that she be granted leave to amend the complaint to assert a claim against defendants under the RLPHRA in her own capacity, but denied leave based on futility because her individual claim would be barred by the statute of limitations.

Roberts timely appealed.

## II.

Although Roberts appeals the district court's entire order of dismissal, *see* Notice of Appeal, she has briefed only the dismissal of the RLPHRA claim and the related denial of her motion to strike. Accordingly, we address the RLPHRA claim only. *See Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 280 n.5 (6th Cir. 2010) (noting that issues not raised and argued on appeal are deemed forfeited). And given that the district court considered only the allegations in the complaint, we find no error in its denial of Roberts's motion to strike as moot.

## A.

Regarding the appropriate standard of review, the district court did not specify the legal standards it applied to defendants' motion to dismiss, which was brought under subparagraphs (1) and (6) of Rule 12(b). The court ultimately concluded that the children lacked "standing" to sue under the RLPHRA, suggesting that it considered defendants' motion under Rule 12(b)(1). *See, e.g.*, *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) ("We review de novo a district court's dismissal of a case for lack of standing – lack of subject matter jurisdiction – under Fed. R. Civ. Proc.

12(b)(1).")).  Courts that have addressed this very issue also have framed the problem in terms of "standing."  *See Mason ex rel. Heiser v. Morrisette*, 403 F.3d 28, 28 (1st Cir. 2005) ("The issue presented in this appeal is whether a lessee's minor children have standing to sue a lessor for failure to disclose information regarding the hazards of lead paint as required by the [RLPHRA].");  *McCormick v. Kissel*, 458 F. Supp. 2d 944, 947 (S.D. Ind. 2006) (concluding that "because an individual's standing to sue may go beyond what is explicitly stated in a statute, D.M. does have standing under RLPHRA"); *see also Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affairs*, 426 F.3d 241, 250 (3d Cir. 2005).

Framing the issue in this way, however, is potentially confusing because "standing," by itself, traditionally has referred to whether a plaintiff can satisfy Article III's case-or-controversy requirement, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) ("[S]tanding is a question of whether a plaintiff is sufficiently adversary to a defendant to create an Art. III case or controversy, or at least to overcome prudential limitations on federal-court jurisdiction[.]" (emphasis omitted)), and there is no doubt that the children satisfy this threshold jurisdictional requirement.  The parties' briefs on appeal demonstrate their confusion on the issue.  Defendants contend that "these two minor children cannot invoke the court's federal question jurisdiction under the RLPHRA because Congress did not empower them to do so[,]" while at the same time recognizing that "the District Court did have subject matter jurisdiction over claims under the RLPHRA[.]"  And Roberts devotes a section of her brief to explaining why her children have Article III and prudential standing.

The parties have confused the questions of constitutional and prudential standing with *statutory* standing, which asks "whether *this* plaintiff has a cause of action under the statute."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998).  The question is closely related to the merits inquiry (oftentimes overlapping it) and is analytically distinct from the question whether a federal court has subject-matter jurisdiction to decide the merits of a case.  *See id.*; *Davis*, 442 U.S. at 239 n.18

(distinguishing the concepts of Article III standing and cause of action and noting that "[w]hether petitioner has asserted a cause of action . . . depends not on the quality or extent of her injury," as does the inquiry under Article III standing, "but on whether the class of litigants of which petitioner is a member may use the courts to enforce the right at issue"); *see also* Radha A. Pathak, *Statutory Standing and the Tyranny of Labels*, 62 Okla. L. Rev. 89, 111 (2009) (discussing the tendency of federal courts, especially in ERISA cases, to incorrectly treat statutory standing as a threshold inquiry akin to jurisdiction – sometimes treating it *as* jurisdictional – instead of addressing it as a merits question). This case concerns statutory standing, an issue we find to be a matter of statutory construction, not jurisdiction.

Where a plaintiff lacks statutory standing to sue, her claim should be dismissed for failure to state a claim upon which relief can be granted, not for lack of subject-matter jurisdiction. *See Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 626 (6th Cir. 2010); *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009);[1] *Bridges v. Am. Elec. Power Co.*, 498 F.3d 442, 444 (6th Cir. 2007); *see also Northwest Airlines, Inc. v. Cnty. of Kent, Mich.*, 510 U.S. 355, 365 (1994) ("The question whether a federal statute creates a claim for relief is not jurisdictional"); *cf. Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 548-50 (6th Cir. 2006) (rejecting contention on appeal that the district court lacked subject-matter jurisdiction over plaintiff's FMLA claim because defendant did not meet the statute's definition of "employer" and because the plaintiff did not meet the definition of "eligible employee").[2]

---

[1] In *Vaughn*, the Ninth Circuit originally stated its standard of review in terms of subject-matter jurisdiction because that was how the district court had addressed the question of the plaintiff's statutory standing. *Vaughn v. Bay Envtl. Mgmt., Inc.*, 544 F.3d 1008, 1010 (9th Cir. 2008). Apparently intending to avoid further confusion on the question in the future, the court issued an amended opinion nearly nine months later solely for the purpose of substituting its original standard-of-review paragraph with the following language: "Although the district court dismissed the case for lack of subject matter jurisdiction, a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction." *Vaughn*, 567 F.3d at 1024 (citations omitted).

[2] We recognize that in the past we have acknowledged an exception to this general rule in the ERISA context, where we have treated as jurisdictional the question whether a plaintiff is a "participant" or "beneficiary" permitted to assert a cause of action under ERISA. *See, e.g.*, *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 442 (6th Cir. 2006); *Ward v. Alt. Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001); *Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 518 (6th Cir. 1995). *But see Bridges*, 498 F.3d at 444

"We give fresh review to a district court's order to dismiss a claim under Civil Rule 12(b)(6)." *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 308 (6th Cir. 2009).  In doing so, we "accept all allegations in the complaint as true" and "determine whether the allegations plausibly state a claim for relief." *Id.*

B.

In 1992, Congress enacted the RLPHRA based upon its findings that low-level lead poisoning, caused primarily by the ingestion of household dust containing lead from deteriorating or abraded lead-based paint, endangers the health and development of children living in as many as 3.8 million American homes.  42 U.S.C. § 4851.  The RLPHRA was enacted to, among other things, "develop a national strategy to build the infrastructure necessary to eliminate lead-based paint hazards in all housing as expeditiously as possible" and to "educate the public concerning the hazards and sources of lead-based paint poisoning and steps to reduce and eliminate such hazards." *Id.* § 4851a(1), (7).

The RLPHRA authorizes the Secretary of Housing and Urban Development to take actions to reduce the potential for lead poisoning, including:  providing grants to eligible applicants to evaluate and reduce lead-based paint hazards in housing that is not federally owned or assisted or publicly owned; establishing a task force to make recommendations on expanding resources and efforts to evaluate and reduce lead-based paint hazards in private housing; issuing guidelines for the conduct of federally supported work involving risk assessments, inspections, interim controls, and the eventual abatement of lead-based paint hazards; and promulgating regulations for the disclosure of lead-based paint hazards in "target housing" (generally, housing constructed prior to 1978, *see id.* § 4851b(27)) that is offered for sale or lease. *Id.* §§ 4852, 4852a-d.

---

("This case turns on whether [plaintiff] is a 'participant' in the Plan, a question of 'statutory standing' *(not Article III standing)*." (emphasis added)).  This, of course, is not an ERISA case.

The statute is explicit with respect to the contents of the regulations the Secretary must promulgate. Relevant here, the regulations "shall require that, before the purchaser or lessee is obligated under any contract to purchase or lease the housing, the seller or lessor shall – (A) provide the purchaser or lessee with a lead hazard information pamphlet," and "(B) disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to the purchaser or lessee any lead hazard evaluation report available to the seller or lessor[.]" *Id.* § 4852d(a)(1)(A), (B). The regulations so provide. *See* 40 C.F.R. § 745.107(a)(1), (2); *see also Sweet v. Sheahan*, 235 F.3d 80, 86-87 (2d Cir. 2000) ("[T]he statute imposes obligations on the agencies to promulgate regulations which will then – and only then – impose obligations on sellers and lessors.").

In addition to providing for public enforcement of its substantive provisions through fines and injunctions, the RLPHRA authorizes private enforcement through civil actions: "Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual." 42 U.S.C. § 4852d(b)(3). It is this provision that we consider here. Roberts contends on appeal, as she did below, that despite her children's status as neither purchasers nor lessees, the children nevertheless are entitled to seek redress for their injuries caused by defendants' alleged violations because the children are de facto lessees with Article III and prudential standing to sue.[3]

## C.

"'A matter requiring statutory interpretation is a question of law requiring de novo review, and the starting point for interpretation is the language of the statute itself.'" *United States v. Brown*, 639 F.3d 735, 737 (6th Cir. 2011) (quoting *United*

---

[3]Roberts argued below that one can plausibly read her complaint to allege a claim under the RLPHRA on her own behalf. The district court rejected this interpretation of the complaint, *see* Dist. Ct. Op. 7 ("A reading of the Complaint evidences that Christina Roberts is not included in the RLPHRA count as asserting a claim on behalf of herself."), and Roberts does not renew her argument on appeal. *See* Roberts's Br. 7 ("The mother and next friend of the injured children, Christina Roberts[,] filed this action *on her children's behalf* . . . ." (emphasis added)). She also does not challenge the district court's denial of leave to amend the complaint. Therefore, we do not address these abandoned issues.

*States v. Batti*, 631 F.3d 371, 375 (6th Cir. 2011)).  We begin with the cardinal rule of statutory interpretation:  "[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms."  *Caminetti v. United States*, 242 U.S. 470, 485 (1917).  "If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning."  *Id.* at 490.

We consider first, then, the text of the relevant provision.  Again, it states:

Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual.

42 U.S.C. § 4852d(b)(3).

The language plainly and expressly limits private recovery to a "purchaser or lessee" of target housing, and no one else.  *See Mason*, 403 F.3d at 31.  "Where a statute names the parties granted the right to invoke its provisions, such parties only may act."  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6-7 (2000) (citation, internal quotation marks, and alterations omitted).  Because the language is plain – indeed, it could not be more so – we stop here and hold that children of a lessee may not sue a lessor for violations of the RLPHRA's disclosure requirements.  We decline to expand the cause of action or to infer an implied one where Congress has expressly created one.  *See, e.g.*, *Traverse Bay Intermediate Sch. Dist.*, 615 F.3d at 630 ("Congress has expressly delegated regulatory and enforcement authority to the Secretary of Education; thus, it is logical to conclude that it did so at the exclusion of local educational agencies."); *see also Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) ("Without [statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."); *cf. Johnson v. City of Detroit*, 446 F.3d 614, 625 (6th Cir. 2006).

Ours is not the only circuit to consider this question. The First Circuit considered it in *Mason ex rel. Heiser v. Morrisette*, 403 F.3d 28 (1st Cir. 2005). There, a lessee's two minor children, who both suffered from elevated levels of lead in their blood, brought an action through their guardian/attorney against the lessors, alleging violations of the disclosure provisions of the RLPHRA. *Id.* at 29. The First Circuit affirmed the district court's dismissal of the claim, "[f]inding that the plain language of the statute limits the private cause of action to a 'purchaser or lessee,'" which the lessee's children clearly were not. *Id.* at 30. The court explained:

> Here, the plain language of the statute limits recovery under § 4852d(b)(3) to a "purchaser or lessee." We find this limitation not only clear, but also consistent with the purpose of the disclosure provision – to provide the purchaser or lessee of target property with notice that there could be a lead-based paint hazard present in the subject premises, and the opportunity to either decline to enter into a contract regarding the premises or proceed forward with the transaction in the face of the knowledge that a lead-based paint hazard could be present. *See* § 4852d(a)(1). This disclosure provision does not require the seller or lessor to abate the lead-paint hazard, nor disqualify a purchaser or lessee with young children from occupying a property that possibly contains lead-based paint hazards. Thus, because a violation of the statute occurs when the seller or lessor fails to disclose, it is logical that the party harmed by the failure to disclose is the purchaser or the lessee.

*Id.* at 31.

The *Mason* court then recognized that extra-textual sources need not be considered, but nonetheless briefly discussed the relevant regulations and legislative history because it found both to be consistent with the statute's plain language:

> First, our interpretation is consistent with the HUD/EPA definition of lessee, which essentially confirms that any entity that is capable of entering into a legally binding contract for the purchase or lease of real property is permitted to seek redress for a violation of the disclosure provision of the RLPHRA; that is, the regulation clarifies that the term "lessee" is not limited to individuals and that it includes sublessees. *See* 40 C.F.R. § 745.103; 24 C.F.R. § 35.86 & Comment IV(C)(9). Thus, the regulation, which is a reasonable clarification of the statute, does not, as the Appellants contend, impermissibly narrow the class of "lessees" who

have standing under Section 4852[d](b)(3), and the Appellants do not have standing under either the regulation or the statute.

Similarly, our interpretation of Section 4852d does not conflict with the legislative history of the RLPHRA. To be sure, as Appellants point out, it is clear from both the legislative history and the text of the statute itself that the RLPHRA was enacted to protect children from the hazards of lead-based paint in residential housing. But, the disclosure provision is merely one method in an attempt to effectuate this goal, and does not conflict with the overarching purposes of the RLPHRA to protect children from lead poisoning.

Lastly, we note that the federal scheme to reduce the hazards of lead-based paint in residential housing is intended to be implemented in conjunction with state and local laws that require abatement of lead-based paint. Thus, the Mason children are not left without a remedy: they can pursue claims against the Appellees in the New Hampshire state courts.

*Id.* at 32-33. We agree.

Various federal district courts, and state courts, too, have concluded that the RLPHRA's plain language confines private actions to purchasers and lessees of target housing and thereby disallows the child of a lessee to maintain an action thereunder. *See Sabra ex rel. Waechter v. Iskander*, No. 1:08-CV-1204-TWT, 2008 WL 4889681, at *3-4 (N.D. Ga. Nov. 10, 2008); *L.B. III v. Hous. Auth. of Louisville*, 345 F. Supp. 2d 725, 729 (W.D. Ky. 2004); *Wallace v. United States*, 335 F. Supp. 2d 252, 259-60 (D.R.I. 2004); *Gladysz v. Desmarais*, No. Civ. 02-208-B, 2003 WL 1343033, at *2 (D.N.H. Mar. 17, 2003); *Skerritt v. Bach*, 805 N.Y.S.2d 213, 214-15 (App. Div. 2005); *Williams v. Ciboro Rentals*, No. CI04-5603, 2006 WL 176532, at *2 (Ohio. C.P. Jan. 13, 2006). We recognize that there is some reported authority for Roberts's view of the statute, *see, e.g.*, *McCormick*, 458 F. Supp. 2d at 947-49, but the authority does not persuade us to depart from the statute's plain language.

Finally, Roberts claims that her children's status as third-party beneficiaries of the lease under Kentucky law provides them with the same rights as the parties to the lease, thereby making them de facto lessees with the right to sue under the RLPHRA. Regardless of whether she is correct as a matter of state law, we fail to see the legal

relevance of that fact here.  Congress created a cause of action for purchasers and lessees, not those who happen to benefit from the sales and leases, yet are not, themselves, purchasers or lessees.  Importing principles of state contract law into the statutory analysis would be inappropriate where Congress has used plain and unambiguous language in crafting a private enforcement mechanism.

III.

In conclusion, the RLPHRA expressly limits those who may sue for violations of its disclosure requirements to a "purchaser or lessee."  Roberts's children are neither. Therefore, Roberts cannot state a valid claim under the RLPHRA on their behalf.  We affirm.